Johnny M. Fielding ("the father") and Susan T. Fielding ("the mother") were divorced in 1997. Among other things, the divorce judgment awarded the mother custody of the parties' two children, ordered the father to pay child support, and provided that the mother could live in the former marital residence until she remarried or cohabited with a member of the opposite sex, or until the youngest child, a son, *Page 767 
turned 19. The mother had the right to purchase the father's one-half interest at any time before or within six months following the occurrence of any of the abovementioned events. If the mother did not exercise her option within those six months, the father would then have the opportunity to purchase her one-half interest. If neither party purchased the other party's one-half interest, either party could request that the residence be sold and the proceeds divided equally.
The trial court, in an amended divorce judgment, reserved the issue of postminority-educational expenses. In September 1998, in response to the parties' respective petitions to modify, the trial court relieved the father of the duty of making child-support payments on behalf of the oldest child, a daughter, who had reached the age of majority. The judgment also required that the father pay one-half of the daughter's postminority-educational expenses.
In June 2000, the father filed a petition seeking the sale of the former marital residence and a reduction of his obligation to pay child support and postminority-educational support. In his petition, he alleged that the mother had received funds from her mother for the children's educations and that she would inherit a large portion of her mother's substantial estate. On July 10, the father amended his petition to allege that he was about to be unemployed because the manufacturing plant at which he was employed was closing at the end of that month. The trial court, on September 15, entered an order reducing the father's child-support payments. In that order the trial court "set aside" the prior postminority-educational-support orders until it held a hearing, which it set for December 2000. The mother filed a motion to amend the trial court's September 15 order, requesting specifically that the trial court not set aside the father's obligation to pay postminority-educational support but that the issue simply be reserved for a future hearing. The trial court denied her motion.
On December 5, the trial court entered another order, adjusting the father's child-support obligation because the father had found other employment. In that order, the trial court stated that "[a]ll issues regarding . . . obligations to pay [postminority-educational support] for the minor [sic] children . . . shall remain open until a further hearing. The [father] shall have the right to contest or attempt to modify his obligation to pay [postminority-educational] support for the minor [sic] children from the date of his petition filed on June 21, 2000."
The wife, on March 8, 2001, filed a motion requesting a hearing on the issues left open in the trial court's December 2000 order. She requested that the father be ordered to contribute to the postminority-educational expenses of both children. After a hearing, the trial court held the father in contempt for failing to pay the daughter's postminority-educational expenses since December 1999, ordered the father to pay $16,654.11 in past-due postminority-educational expenses incurred by the daughter, ordered the father to pay one-half of the future postminority-educational expenses of both children, and modified the paragraph allowing the mother to live in the former marital residence until the son reached age 19 so as to allow the mother to continue living in the home until the son completed his college education.
After his postjudgment motions were denied, the father appealed. He argues that the trial court erred by ordering him to pay $16,654.11 in past-due postminority-educational support, in ordering him to continue paying one-half of his children's postminority-educational expenses, and in *Page 768 
modifying the property settlement in the divorce judgment by allowing the mother to reside in the former marital residence until the son completes his college education. After a review of the testimony and documentary evidence, we agree with the father that the trial court's judgment is due to be reversed in its entirety.
 Postminority-Educational Support for the Daughter
The record indicates that the daughter attended Shelton State Community College before attending the University of Alabama.[1] According to his testimony at trial, the father paid the junior-college expenses, but he was not aware that the daughter had transferred to the University until she was in her second semester there. The father last paid any part of the daughter's expenses in December 1999. The mother presented an exhibit at trial in which she had computed the father's half of the daughter's expenses prior to December 4, 2000, at $10,056.67.[2]
No documentation supporting the mother's figures appears in the record.[3]
According to the mother, the father had paid only two payments totaling $1,442 toward the daughter's educational expenses. The mother also calculated the father's half of the daughter's expenses from December 4, 2000, to June 12, 2001, to be $6,597.44. Those expenses are supported by documentation. The trial court awarded the mother $16,654.11. The judgment also ordered the father to continue to pay one-half of the daughter's postminority-educational expenses. The father argues that the award of postminority-educational expenses places an undue hardship on him.
The father, who has a high school education, testified about his income. Although the father was making $3,096.35 per month in August 1998, he lost his job when the manufacturing plant at which he was employed closed in July 2000. He is presently employed as a jailer by the Etowah County Sheriff's Department. His annual gross income is $19,760, which translates to $1,647 in gross income per month. The father's expenses, including one-half the mortgage payment on the former marital residence and the mortgage payments on the house in which he lives with his second wife, total $1,414, including a $135 payment on some miscellaneous debts. The father's wife is employed at a grocery store. The father testified that he had approximately $100 in his checking account and that he had no savings accounts or certificates of deposit. Using the father's monthly gross income, without allowing for taxes and other deductions, the father has $233 per month in disposable income after paying his expenses out of which to contribute to the postminority-educational expenses of both children.
The record does not provide a breakdown of the daughter's educational expenses on a monthly or per semester basis. However, the award of approximately $16,200 in postminority-educational support, which allegedly represents one-half of the daughter's expenses for six semesters of her college career, indicates that *Page 769 
the daughter's educational expenses total, on average, approximately $450[4] per month. That amount is nearly twice as much as the disposable income the father would have available to pay those expenses.
The father argued at trial that he was simply unable to pay one-half of the postminority-educational expenses incurred by his daughter and that the trial court should reduce or terminate his obligation. Our supreme court has stated that a trial court has jurisdiction to "award sums of money out of the property and income of either or both parents for the post-minority education of a child . . . ." Ex parte Bayliss,550 So.2d 986, 987 (Ala. 1989). However, this court has recognized that a trial court may not award an amount of postminority-educational support if such an award would place an undue hardship upon the paying parent.See Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990) (discussing undue hardship).
This court has reversed an award of postminority-educational support when "[o]rdinary arithmetic would indicate that after taxes and other deductions, the father has a disposable income barely sufficient to meet his current financial obligations." Jones v. Philpot, 591 So.2d 864, 867
(Ala.Civ.App. 1991); see also A.L. v. B.W.,735 So.2d 1237, 1239-40 (Ala.Civ.App. 1999). The father in the present case faces a similar financial picture. The mother commented during the trial that the father "could also get a parent loan if he wanted to send his child to school." Although this court has held that mere personal sacrifice on the part of a parent is not undue hardship, see Thrasher, 574 So.2d at 841, to require a parent to pay a portion of a child's postminority-educational expenses despite the fact that he or she may be required to incur additional debt to do so goes beyond mere personal sacrifice. A child is not entitled to have his or her parent finance all or part of postminority-educational endeavors without regard to the financial impact doing so would impose upon that parent. A trial court considering whether to award postminority-educational support should consider several factors, but must focus "primarily [upon] the financial resources of the parents and the child." Ex parte Bayliss, 550 So.2d at 987.
We are convinced that the father has proven that he is unable to pay one-half of the postminority-educational expenses incurred by his daughter. The father first alleged his inability to pay in a motion filed on June 21, 2000, seeking to reduce child support and postminority-educational support. Our conclusion that the imposition of the obligation to pay those postminority-educational expenses places an undue hardship on the father is retroactive to that date. The father is still liable for one-half of any postminority-educational expenses the daughter incurred before that date. Because the record does not contain a breakdown of the daughter's expenses by month or by semester, we cannot determine the amount of the expenses incurred before June 21, 2000. On remand, the trial court must determine the amount of the daughter's postminority-educational expenses incurred before June 21, 2000, and then award the wife one-half of those expenses.
 Postminority-Educational Support for the Son
The son, who reached the age of majority in July 2001, planned to attend Shelton State before attending the University of Alabama. The wife requested, and the trial court ordered, that the father be required to pay one-half of the son's *Page 770 
postminority-educational expenses. The father argues that he cannot pay one-half of his son's postminority-educational expenses without undue hardship.
We have already discussed the father's income and expenses. Although the record contains some information about some of the costs associated with the daughter's attendance at Shelton State, neither the mother nor the son testified concerning the tuition per semester, the anticipated cost of books and supplies, or the cost of room and board, if applicable. This court has often reminded trial courts that, without such information, this court cannot determine whether an award of postminority-educational support poses an undue hardship on the parent ordered to pay those expenses. See Thrasher, 574 So.2d at 841; Thompsonv. Thompson, 689 So.2d 885, 888 (Ala.Civ.App. 1997). The trial court's award in the present case requires the father to assume one-half of an unknown amount. We cannot determine whether the award poses an undue hardship for the father; therefore, we must reverse the order requiring payment of postminority-educational expenses for the son.
 Modification of the Provision Requiring Sale of the Former Marital Residence
The father also appeals the trial court's modification of the provision in the 1997 divorce judgment permitting the mother to live in the former marital residence until the youngest child reached the age of majority. The father petitioned to have the house sold before the son's 19th birthday; however, the trial court did not consider ordering the sale until the hearing in June 2001, approximately one month before the son turned 19. The trial court did not order the house sold, and, in fact, it amended the provision to allow the mother to remain in the house until the son graduates from college, provided he makes "satisfactory progress toward a four-year baccalaureate degree." The father argues that the trial court impermissibly modified the provision. We agree.
The property-division provisions of a divorce judgment become final 30 days after the judgment is entered. McGiboney v. McGiboney, 679 So.2d 1066,1068 (Ala.Civ.App. 1995). After the 30 days has elapsed, the property division is non-modifiable. McGiboney, 679 So.2d at 1068; see alsoJohnson v. Johnson, 585 So.2d 89, 90 (Ala.Civ.App. 1991). The trial court amended the 1997 provision concerning the timing of the sale of the marital residence in 2001, much more than 30 days after the judgment was entered. The trial court was without jurisdiction to modify the terms of the 1997 judgment as to the timing of the sale of the former marital residence.
The appellee's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson and Pittman, JJ., concur.
Yates, P.J., concurs in the result.
[1] The record does not reveal when the daughter began attending the University of Alabama. However, it does reveal that she attended the University in fall semester 2000, spring semester 2001, and summer semester 2001. During the spring 2001 and summer 2001 semesters, the daughter was also enrolled in Shelton State.
[2] This figure, according to the mother, includes $114 in court costs the father failed to pay and $340 for health insurance premiums that the mother paid while the father was unemployed.
[3] The father has not argued that the trial court erred in its computation of the past-due postminority-educational expenses awarded.
[4] Because it appears that the daughter has completed three years of college, we divided $16,200 by 36 to determine the average monthly cost of the daughter's education.