[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 230 
Alan W. Taylor ("the father") and Neressa Taylor ("the mother") were divorced on July 21, 1998. Two children, a daughter and a son, were born of the parties' marriage. At the time of the final hearing in this matter, the daughter was 18 years old and the son was 14 years old. The divorce judgment awarded custody of the parties' children to the mother and ordered the father to pay child support. The July 21, 1998, divorce judgment was later modified.
On July 11, 2006, the father filed a petition seeking a modification of his child-support obligation and custody of the parties' children. The mother answered and counterclaimed seeking an award of post-minority support for the parties' daughter and an increase in the father's monthly child-support obligation. At the time the mother filed her claim seeking postminority support, the daughter had not reached the age of majority.
Following an ore tenus hearing, the trial court entered a judgment on March 8, 2007, in which it denied the father's petition to modify custody, ordered the father and the mother each to pay one-half of the daughter's college or trade-school educational expenses, and ordered the father to continue to pay $636.23 in monthly child support so long as the daughter remained in the mother's home.
On March 18, 2007, the father filed a motion to alter, amend, or vacate the trial court's March 8, 2007, judgment. In his postjudgment motion, the father argued, among other things, that the parties' daughter had reached the age of majority before the judgment was entered and, *Page 231 
therefore, that his child-support obligation should be reduced to $406.50 per month to provide support for the parties' minor son. The trial court denied the father's post-judgment motion on May 1, 2007, and the father timely appealed.
The evidence presented at the final hearing revealed the following pertinent facts. The parties' daughter (hereinafter "the child") was born on March 3, 1988. The child graduated from high school in May 2006. Transcripts of the child's grades from 9th to 12th grade were admitted into evidence at the final hearing. Jason Yohn, the principal of the child's former high school, described the child's grades as average. Yohn testified that the child ranked 85th out of the 94 students in her graduating class. Yohn testified that the child had to take the Alabama High School Graduation Exam several times before she passed the exam.
In or about August 2006, the child enrolled at Central Alabama Community College ("CACC"). During her first semester at CACC, the child took biology, English, algebra, and music-appreciation classes. The child also took a college-orientation class. Joan Griffin, a records specialist at CACC, testified that the child had received a failing grade in biology and music appreciation. Griffin testified that the child had received a grade of unsatisfactory in English and an incomplete grade in algebra. Griffin explained that English and algebra were both considered developmental courses and that the grades received in those classes did not contribute to a student's overall grade-point average. Griffin testified that the child received a "B" in her college-orientation class. A copy of the child's transcript from her first semester at CACC was admitted into evidence at the final hearing. The transcript reveals that the child's overall grade-point average was .37 on a 4.00 point system for that first semester.
Griffin testified that the child was enrolled as a full-time student at CACC at the time of the final hearing. According to Griffin, the child was taking a full course load consisting of classes in English, psychology, art, and speech. Griffin explained that the child was not currently on any type of academic probation but that the child could be if the child's second semester at CACC mirrored her first semester. Griffin testified that if the child does not bring up her grade-point average to at least a 1.5 she will receive an academic warning and that if, after the completion or attempted completion of 22 course hours, the child does not have a 1.7 grade-point average she will be placed on academic probation. Griffin explained that the child would be given every opportunity to succeed before being asked to leave CACC.
The mother testified that the child had been diagnosed with attention deficit disorder ("ADD") in high school. The mother testified that the child had been prescribed Adderall to treat the ADD and that the child's symptoms improved while she was taking the medication. The mother explained that the child had taken the medication during her 9th-grade year but that the child had declined to take it in the 10th grade. According to the mother, the child became very sleepy and experienced a loss of appetite while taking the medication. The mother testified that the child was embarrassed to take the medication at school. The mother testified that the child took the medication intermittently in the 11th and 12th grades but that the child ultimately decided to stop taking the medication. According to the mother, the doctor treating the child explained that some children can "outgrow" ADD, and, the *Page 232 
mother testified, the child wanted to try to "outgrow it."
The mother testified that she home-schooled the child for most of the child's 10th-grade year and for approximately six weeks of the child's 11th-grade year after the child was diagnosed with a "social phobia." The mother explained that neither she nor the child's doctors knew the cause of the child's social phobia.
The mother testified that the child lives with her and that the child will continue to live with her while the child attends CACC. The mother stated that the child had experienced a difficult transition from high school to college. The mother explained that the child's grades in her first semester at CACC reflected that difficult transition.
According to the mother, student loans covered most of the child's college expenses. The mother testified that she paid for those expenses not covered by the student loans. The mother estimated that she had paid $312 for the cost of books not covered by student loans. The mother asked the trial court to order the father to pay one-half of the child's college tuition and expenses.
According to the father, he and the child had discussed her desire to go to college. The father testified that he told the child that he and the mother would "split" the cost of her college education as long as she "was getting an education." The father testified that if the child wanted to go to college and make good grades, then he would do everything in his power to help her go to college.
The child testified regarding her desire to get a college education and to become a nurse. The child acknowledged that her grades following her first semester at CACC were poor, but she explained that her grades were low because she had not yet adjusted to the studying required for college courses as opposed to the studying required for high-school courses. The child testified that she believed that she could make better grades. The child testified that she believed she was doing well in her second-semester courses at CACC. At the time of the final hearing, the child was employed working two jobs. The record does not indicate how much the child earned from her employment or what, if any, portion of her earnings she used to pay for her college and living expenses.
The father and the mother offered limited testimony regarding their finances. The father testified that he earned approximately $40,000 in 2006. The mother testified that she earned $39,988 per year.
At the outset, we note the applicable standard of review.
 "When a trial court hears ore tenus evidence, its judgment based on facts found from that evidence will not be disturbed on appeal unless the judgment is not supported by the evidence and is plainly and palpably wrong. Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990). Further, matters of child support are within the sound discretion of the trial court and will not be disturbed absent evidence of an abuse of discretion or evidence that the judgment is plainly and palpably wrong. Id."
Spencer v. Spencer, 812 So.2d 1284, 1286
(Ala.Civ.App. 2001).
 Postminority Educational Support
The father challenges on appeal the trial court's award of postminority educational support for the child. Generally, a trial court has no jurisdiction to require a parent to provide support for a child who has reached the age of majority.Penney v. Penney, 785 So.2d 376 (Ala.Civ.App. 2000). However, an exception to this rule applies when a request for postminority *Page 233 
educational support is made before the child reaches the age of majority. Id.
 "The Supreme Court of Alabama set out certain factors for the trial court to consider when ruling on a petition for postminority [educational] support. See Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). Bayliss clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of postminority educational support for a child of divorced parents, the trial court `"shall consider all relevant factors that shall appear reasonable and necessary, including primarily
the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."' A.L. v. B.W., 735 So.2d 1237, 1239 (Ala.Civ.App. 1999); Thompson v. Thompson, 689 So.2d 885, 887 (Ala.Civ.App. 1997) (quoting Ex parte Bayliss, 550 So.2d 986, 987
(Ala. 1989)). The court suggested that trial courts also should consider `the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance.' Id. at 987. The trial court must also determine if the noncustodial parent has `sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.' Thrasher v. Wilburn, 574 So.2d 839, 841
(Ala.Civ.App. 1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id."
Penney v. Penney, 785 So.2d at 378-79.
The father contends that the trial court erred by requiring him to pay postminority educational support for the child because, he argues, the evidence presented at the final hearing revealed that the child did not have the aptitude for college. Specifically, the father contends that the child's struggle to graduate from high school, her ADD diagnosis, and her past experience suffering from a social phobia demonstrate that the child does not have the necessary aptitude to graduate from college.
The evidence presented at the final hearing revealed, as the father asserts on appeal, that the child had been diagnosed with a social phobia and ADD while in high school and that the child had struggled to pass her exit exam in order to graduate from high school. The evidence also revealed that the child had not performed well during her first semester at CACC, earning a .37 grade point average for that semester. However, testimony presented at the final hearing indicated that the child's performance at college was improving and that the child had not been placed on academic probation. The mother attributed the child's poor performance during her first semester to the child's difficult transition from high school to college. Likewise, the child testified that her first-semester grades were low because she had not yet adjusted to the studying required for her college courses. The child testified that she believed that she could make better grades and that she believed that, at the time of the final hearing, she was performing better in her second-semester classes.
The father's testimony at the final hearing revealed that he supported the child in her desire to pursue a college education in spite of difficulties attributed to her ADD and her social phobia. At the final hearing, the father testified that he had told the child that he would help pay for her college education. *Page 234 
Although the child's performance in college had been below average, the trial court could have determined, based on the evidence presented at the final hearing, that the child needed more time to prove herself capable of succeeding in a college environment. Further, the trial court could have concluded that the child had demonstrated a desire to succeed in college despite her learning disability. This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141
(Ala.Civ.App. 2000). Given the presumption in favor of the trial court's judgment and the trial court's unique position as the fact-finder, we cannot say that the trial court exceeded its discretion by concluding that the child had the aptitude and desire for a college education.
The father next contends that the trial court erred by ordering him to pay postminority educational support without first determining whether such an award would create an undue hardship on him. The father argues that the trial court heard very little evidence regarding his financial resources and the costs associated with the child's college education.
In McCarthy v. Popwell, 880 So.2d 1156
(Ala.Civ.App. 2003), the trial court ordered the mother to pay postminority educational support in the amount of $280 per month. The mother appealed, arguing that the trial court had entered its judgment requiring her to pay postminority educational support without first considering the financial resources of both parents. 880 So.2d at 1157. On appeal, this court reversed the judgment of the trial court on the basis that it appeared that the trial court had only considered the financial resources of the father when it awarded postminority educational support. McCarthy v. Popwell,880 So.2d at 1158.
In Fielding v. Fielding, 843 So.2d 766
(Ala.Civ.App. 2002), the trial court ordered the father to pay one-half of the postminority educational expenses for his daughter and son. The father appealed. On appeal, the father contended that he could not pay one-half of his children's postminority educational expenses without undue hardship. After finding sufficient evidence in the record to review the award of post-minority educational support as it pertained to the daughter, this court reversed the trial court's judgment, holding that paying one-half of the daughter's postminority educational expenses created an undue hardship on the father.Fielding v. Fielding, 843 So.2d at 769. Regarding the award of postminority educational support for the son, this court held that the trial court's award required the father to assume payment of one-half of an unknown amount given the lack of evidence in the record pertaining to the son's anticipated college expenses, and we reversed that portion of the trial court's judgment requiring the father to pay postminority educational support for the son. In so holding, this court noted that, "without such information, [we] cannot determine whether an award of postminority-educational support poses an undue hardship on the parent ordered to pay those expenses."Fielding v. Fielding, 843 So.2d at 770.
The record in the instant case contains minimal evidence regarding the income of the father and the mother, as well as the expenses associated with the child's college education. Testimony revealed that the father and the mother have comparable incomes. The mother testified that the child receives student loans to pay for a portion of her college expenses. The record contains no evidence regarding the amount of the loans the child receives or the terms of those loans. The mother testified that she had paid approximately $312 in expenses not covered by the loans. *Page 235 
However, the record contains no evidence regarding the type and amount of the child's college expenses or the cost of the child's college tuition.
"`[I]n child support cases the trial court is bound by the legal evidence or lack of it,' and `[i]t may not speculate on the ability of the parties to pay nor on the needs of the children.'" Thomas v. Campbell, 960 So.2d 694, 701
(Ala.Civ.App. 2006) (quoting Berry v. Berry,579 So.2d 654, 656 (Ala.Civ.App. 1991)) (reversing an award of postminority educational support because the court was unable to determine from the record the total extent of the father's financial obligation). Because we cannot determine from the record the total extent of the father's postminority-educational-support obligation, we cannot say that the trial court's judgment does not subject the father to undue hardship. Therefore, we must reverse that portion of the trial court's judgment requiring the father to pay one-half of the child's college expenses and remand the case for further proceedings. Thomas v.Campbell supra. Onremand, the trial court should take sufficient evidence to ascertain and declare the child's postminority educational expenses, including expenses for tuition and fees, [1] and should determine the financial ability of the father to pay one-half of those actual expenses.[2]
Finally, the father contends that the trial court failed to set reasonable limitations on its award of postminority educational support. Specifically, the father argues that the trial court failed to state in its judgment that the child was required to maintain at least a "C" average and that the child was required to be enrolled as a full-time student.
 "[T]his court has held that the trial court must set reasonable limitations on the parent's responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent. See Manring v. Manring, 744 So.2d 919, 922 (Ala.Civ.App. 1999); Hocutt v. Hocutt, 591 So.2d 881, 882 (Ala.Civ.App. 1991); Kent v. Kent, 587 So.2d 409, 412
(Ala.Civ.App. 1991). These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a `C average, and (3) requiring that the child be enrolled as a full-time student. Manring v. Manring, 744 So.2d 919, 922 (Ala.Civ.App. 1999); Ullrich v. Ullrich, 736 So.2d 639, 643
(Ala.Civ.App. 1999) (quoting Bahri v. Bahri, 678 So.2d 1179, 1181 (Ala.Civ.App. 1996))."
Penney v. Penney, 785 So.2d at 379.
The trial court's March 8, 2007, judgment requires the father to pay for one-half of the child's educational expenses "so long as [the child] maintains reasonable academic standards." The trial court's judgment limits the obligation to pay those expenses, stating "[e]ach parties' obligation shall not extend past the child's twenty-third (23rd) birthday." Although the judgment limits the postminority educational support to a reasonable period of time, it does not require the child be enrolled *Page 236 
as a full-time student. Further, the trial court's requirement that the child maintain "reasonable academic standards" is subjective and overly broad and, therefore, fails to adequately limit the award of postminority educational support. Accordingly, we reverse the trial court's judgment insofar as it fails to set reasonable limitations on its postminority-educational-support award, and we remand the case for the trial court to enter an order consistent with this opinion.
 Postminority Child Support
The father also contends on appeal that the trial court erred by requiring him to pay child support in addition to the postminority educational support for the benefit of the child after the child had reached the age of majority. In its judgment, the trial court ordered the father to pay child support for the benefit of the child "so long as [the child] remains [in the home of the mother]." The record indicates that the child was 18 years old at the time the petition for postminority support was filed (and at the time of the final hearing in this matter). Shortly after the final hearing and before the trial court entered its March 8, 2007, judgment, the child turned 19 years old, thereby attaining the age of majority. See § 26-1-1, Ala. Code 1975 (providing that the age of majority in Alabama is 19 years old).
As noted earlier, the general rule in Alabama is that a trial court has no jurisdiction to require a parent to provide child support to a child who has reached the age of majority.Penney v. Penney, supra. In addition to the exception providing for postminority educational support, an exception to the general rule exists when a noncustodial parent has agreed to provide support for a child past the age of majority,Beavers v. Beavers, 717 So.2d 373 (Ala.Civ.App. 1997), and when an adult child is so mentally or physically disabled that he or she cannot support himself or herself.Beavers, supra (citing Ex parte Brewington,445 So.2d 294 (Ala. 1983)).
The father contends that he has no obligation to pay monthly child support for the benefit of the child, who has reached the age of majority. Penney v. Penney, supra. In her responsive brief on appeal, the mother argues that the trial court's award of child support fell within the exception providing for postminority support for adult children who are mentally disabled. However, our review of the record reveals that the mother did not request in her counterclaim postminority child support on the basis that the child was mentally disabled. Further, the mother did not present evidence at the final hearing indicating that the child was mentally disabled and that the child's disability rendered the child incapable of earning an income sufficient to provide for her reasonable living expenses. See Lightel v. Myers, 791 So.2d 955
(Ala.Civ.App. 2000) (recognizing that a trial court must determine that an adult child is not capable of earning an income sufficient to provide for his or her reasonable living expenses before it can award postminority child support on the basis of a disability).
In Sheeley v. Chapman, 953 So.2d 1252
(Ala.Civ.App. 2006), the trial court entered a judgment in which it awarded postminority educational support but failed to terminate the father's child-support payments upon the child's reaching the age of majority. On appeal, this court held that a separate award of postminority educational support did not justify the trial court's failure to terminate the father's child-support obligation once the child had reached the age of majority. Sheeley v. Chapman, supra. In this case, because no exceptions justify an award of postminority child support, that portion of the trial court's judgment *Page 237 
entered after the child had reached the age of majority and ordering the father to pay monthly child support for the benefit of the child is reversed.
The father further contends that the trial court erred by ordering the collection of his child-support payments through an income-withholding order because, he argues, an income-withholding order is only permitted in cases in which the support at issue is for a minor child. Because we are reversing the trial court's award of postminority child support, the father's argument regarding the trial court's award of said child support through an income-withholding order is moot. However, we note that the trial court's income-withholding order still applies to the father's child-support obligation for the parties' minor son.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
BRYAN, J., concurs.
PITTMAN, J., concurs specially.
THOMAS, J., concurs in part and dissents in part, with writing, which MOORE, J., joins.
[1] Because the child will be living with the mother while attending CACC, the trial court need not consider the costs of room and board.
[2] In the future, attorneys who represent parents in an action for postminority educational support should present sufficient evidence from which the trial court can ascertain the costs associated with the college education of the child in question and the parents' ability to pay. This court will eventually move toward a policy in which it will no longer remand these matters to the trial court for the taking of additional evidence.