On Application for Rehearing

THOMAS, Judge.
This court’s opinion of September 21, 2012, is withdrawn, and the following is substituted therefor.
Barbara Jo Jeter Nail (“the mother”) and Barry Jeter (“the father”) were divorced on November 4, 2010. The parties have two children, Barry Max (“Max”) and Emma (sometimes hereinafter referred to collectively as “the children”). The divorce judgment awarded the father primary physical custody of the children and ordered the mother to pay $600 per month in child support. On April 5, 2011, the mother filed a petition in the Marshall Circuit Court in which she sought, among other things, primary physical custody of the children, postminority educational support for Max, and a hearing on her allegation that the father had failed to comply with the terms of the divorce judgment regarding the transfer of her personal property. The father answered the mother’s petition and filed a counterpetition claiming that, among other things, the mother had caused the balance of the credit-card account that he had been made *848 responsible for in the divorce judgment to increase in the amount of $4,620. On August 17, 2011, the father filed a contempt motion alleging that the mother was influencing Max to disobey the father in an attempt to “‘win’ her case of custody.” The mother responded to the father’s contempt motion, denying the father’s allegation.
On September 22, 2011, the mother filed a motion to compel the father to produce his cellular-telephone records. She asserted that she had requested production of his cellular-telephone records on August 22, 2011, but that the father had failed to produce them. The father responded to the mother’s motion to compel, stating that his cellular-telephone records were “immaterial, irrelevant, not intended to lead to discoverable evidence, and should not be produced.” He claimed that the mother intended to “misuse” or “attempt to harm” the father with the information contained in his cellular-telephone records. He requested that the trial court deny the mother’s motion to compel or, in the alternative, that the trial court limit the use of the information contained in his cellular-telephone records to the specific purpose for which the mother stated that his cellular-telephone records were needed.
A trial was held on October 4, 2011, at which the trial court heard ore tenus testimony. The trial court entered its judgment on October 13, 2011, in which it transferred primary physical custody of Max to the mother, specifically “declinefd] to set any visitation schedule” for Max “due to [his] age and [his] actions[,]” declined to transfer custody of Emma to the mother or to change the mother’s visitation schedule regarding Emma, modified the mother’s child-support obligation, directed the parties to “take the steps necessary to ensure that the [marital residence] is listed at the price suggested by the listing agent,” awarded $3,000 to the father, and denied all other requested relief, including, specifically, postminority educational support for Max.
The mother filed a motion to alter, amend, or vacate the trial court’s judgment on October 17, 2011, and the father filed a response and an amended response to the mother’s postjudgment motion. A hearing was held on the mother’s post-judgment motion on December 7, 2011, and, on December 15, 2011, the trial court entered its judgment denying her post-judgment motion.
The mother timely appealed to this court on December 28, 2011. She seeks this court’s review of six issues. She contends that the trial court erred by (1) denying her motion to compel the father to produce his cellular-telephone records, (2) failing to hold the father in contempt because, she says, he refused to follow the court’s orders regarding the property division, (3) failing to modify the custody of Emma, (4) failing to properly modify her child-support obligation, (5) awarding a judgment in the amount of $3,000 to the father, and (6) denying an award of post-minority educational support for Max.

The Denial of the Motion to Compel the Father’s Cellular-Telephone Records

The mother’s first contention is that the trial court erred because, she says, it improperly limited her discovery efforts. The mother relies on Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 310 So.2d 210 (1975), Campbell v. Regal Typewriter Co., 341 So.2d 120 (Ala.1976), Ex parte Knox Kershaw, Inc., 562 So.2d 250 (Ala.1990), Reed v. Dyas, 28 So.3d 6 (Ala.Civ.App.2009), and Hood v. Hood, 76 So.3d 824 (Ala.Civ.App.2011), to support her argument on appeal.
“ ‘ “Pursuant to Rule 26, Alabama Rules of Civil Procedure, a *849 trial court is given authority to either limit or restrict discovery, and once the trial court chooses to so limit or restrict, its action will be liberally and broadly construed. This court will not, therefore, reverse unless it appears the trial court abused its discretion....”
“ ‘Ex parte Sullivan, Long & Hagerty, 567 So.2d 314, 314-15 (Ala.Civ.App.1990).’
“Ex parte HealthSouth Corp., 712 So.2d 1086, 1088 (Ala.1997).”
Ex parte Tuscaloosa Cnty., 825 So.2d 729, 732 (Ala.2001).
The record reflects that the mother filed her action against the father on April' 5, 2011. On August 22, 2011, the mother requested the production of, among other documents, the father’s cellular-telephone records. Although the father produced the other requested documents, the father did not produce his cellular-telephone records. The father first stated that he was unable to print his cellular-telephone records because Max had removed the computer and printer from the father’s home. On September 22, 2011, 12 days before the trial, the mother filed a motion to compel the father to produce his cellular-telephone records, and, on the same day, the father filed his response to the mother’s motion to compel in which he asserted that his cellular-telephone records were irrelevant. The mother never filed a notice to serve a third-party subpoena on the father’s cellular-telephone carrier. The trial court heard the arguments of counsel regarding the mother’s request for discovery of the cellular-telephone records at the October 4, 2011, trial at which the mother’s attorney admitted that she had failed to subpoena the father’s cellular-telephone carrier for his cellular-telephone records because she wanted to “bypass ... additional charges that I would have to pay [the father’s cellular-telephone carrier] or someone else.” The mother’s attorney suggested that the trial court order the father to download the cellular-telephone records “during a lunch break or ... continue the trial for the records to be obtained.”
The trial court orally denied the mother’s motion to compel because the mother’s attorney had failed to subpoena the father’s cellular-telephone carrier.
“ ‘Discovery matters are within the trial court’s sound discretion, and this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion.’ Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003) (citing Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala.1991)).”
Grocholski v. Grocholski, 89 So.3d 123, 128 (Ala.Civ.App.2011). In this case, we determine that the trial court acted within its discretion because the mother’s attorney failed to follow the proper procedure by filing a third-party subpoena.
Furthermore, to the extent that the exclusion of the father’s cellular-telephone records was error, it was harmless error. Ala. R.App. P., Rule 45 (“Error Without Injury”); see also Ala. R. Civ. P., Rule 61 (“Harmless Error”).[1] The mother prof *850 fered that she intended to prove that the father had frequently telephoned or sent harassing text messages to her, her mother, and her friends. Presumably the mother and those persons would have allowed their cellular-telephone records to be used to show the alleged incoming telephone calls and text messages from the father; thus, any error in excluding the father’s cellular-telephone records was harmless.

The Refusal to Hold the Father in Contempt Regarding the Property Division

Next the mother argues that the trial court erred by failing to hold the father in contempt because, she says, he refused to follow the trial court’s orders regarding the property division. She provides citations to Reed v. Dyas, 28 So.3d 6, 8 (Ala.Civ.App.2009), and Hood v. Hood, 76 So.3d 824, 831 (Ala.Civ.App.2011), in support of this argument.
“The standard of review of a judgment of contempt is as follows:
“ ‘ “[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.” ’
“Nave v. Nave, 942 So.2d 372, 377 (Ala.Civ.App.2005) (quoting Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994)). Furthermore,
“ ‘ “ ‘[i]n ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.’ Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993).” ’
“Gladden v. Gladden, 942 So.2d 362, 369 (Ala.Civ.App.2005) (quoting Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004)).”
S.A.T. v. E.D., 972 So.2d 804, 809 (Ala.Civ.App.2007).
The father testified that the parties’ divorce judgment required the parties to agree to a division of their personal property. Any remaining personal property that they could not agree upon was to be sold, and the parties were instructed to equally divide the proceeds of the sale of any disputed items of personal property. According to the father’s testimony, the mother had created a list of the personal property that she wanted. The father did not agree to allow the mother to have all the property listed on the mother’s list. Instead, he created two lists. He said: “These two lists were lists that I provided and said she could pick either list one or list two. She can have everything on list two or everything [on] list one.... I gave her the opportunity to choose what list she wanted.” The father testified that the lists he prepared were an attempt to reach an agreement and that, once the parties reached an agreement, the mother was free to take her personal property from the marital residence. The mother offered the lists into evidence. The mother’s testimony regarding the division of personal property consists of exactly three questions and answers. She said that she had never told the father to keep her personal property, that she had asked for her personal property, and that the father had never communicated with her about the personal property.
We determine that, unlike the wife in Reed, 28 So.3d at 8, and the wife in Hood, 76 So.3d at 831, the mother has *851 failed to provide sufficient evidence indicating that the trial court exceeded its discretion by declining to hold the father in contempt of court. In this case, the trial court could have reasonably determined that the father’s testimony was credible and that he had attempted to abide by the court’s order, especially in light of the mother’s relatively slight testimony contradicting the father’s extensive testimony and the documentary evidence.
“ ‘ “ ‘The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.’ The rule applies to ‘disputed issues of fact,’ whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence.” ’
“Yeager v. Lucy, 998 So.2d 460 (Ala.2008) (quoting Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000)).
“We also note that ‘ “[i]t is well settled that an appellant has the burden of presenting a record containing sufficient evidence to show error by the trial court.” ’ Wilcoxen v. Wilcoxen, 907 So.2d 447, 450 (Ala.Civ.App.2005) (quoting Leeth v. Jim Walter Homes, Inc., 789 So.2d 243, 246 (Ala.Civ.App.2000)).”
Ex parte Brown, 26 So.3d 1222, 1225 (Ala.2009).

The Denial of a Change in the Custody of Emma

“On appellate review of custody matters, this court is limited when the evidence was presented ore tenus, and, in such circumstances, a trial court’s determination will not be disturbed ‘absent an abuse of discretion or where it is shown to be plainly and palpably wrong.’ Alexander v. Alexander, 625 So.2d 433, 434 (Ala.Civ.App.1993) (citing Benton v. Benton, [520 So.2d 534 (Ala.Civ.App. 1988)]). As the Alabama Supreme Court highlighted in [Ex parte ] Patronas [, 693 So.2d 473 (Ala.1997) ], ‘ “[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.” ’ Patronas, 693 So.2d at 474 (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)). Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining whether there was sufficient evidence to support the trial court’s judgment. See Patronas, 693 So.2d at 475.”
Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007).
Initially, we note that the mother’s only citations to authority regard our standard of review and that the mother rightly concedes that she bore the burden of proving that a change in custody would materially promote Emma’s best interests.
“Pursuant to Ex parte McLendon [, 455 So.2d 863 (Ala.1984) ], a parent seeking to modify custody must demonstrate that the change in custody would materially promote the child’s welfare and that the disruption caused by the change in custody would be offset by the advantages of that custody change.”
Smith v. Smith, 865 So.2d 1207, 1210 (Ala.Civ.App.2003). Despite the meager authority cited, we have examined the testimony presented to the trial court and conclude that the trial court did not exceed its discretion by denying the mother’s petition for custody of Emma.
In her brief, the mother asserts that she presented overwhelming evidence to the trial court of the father’s lack of fitness as a parent. She alleged that the father had stalked and harassed her and her mother, *852 had a hostile relationship with Max, had spoken to the children about the mother in a derogatory manner, had urinated in the bathroom while Emma was brushing her teeth, had allowed Emma to sleep in his bed at times, and had not attended to Emma’s scholastic and medical needs.
The father testified, disputing or explaining each of the mother’s allegations. The father denied the mother’s allegations that had stalked or harassed anyone, that he had urinated in Emma’s presence,[2] or that he had not attended to Emma’s scholastic needs.[3] The father testified that approximately six times in the past year Emma had slept in his bed when she was “scared and upset.”
The father responded to the mother’s testimony regarding her allegation that he had failed to attend to Emma’s medical needs. He said that Emma had fallen off her bicycle while in his care and that she had told him that her hand hurt. He testified that he had examined her hand and that he had believed that she did not need medical attention. He admitted that the next day, while the mother was exercising her visitation with Emma, Emma had complained to the mother; the mother took Emma for an X-ray, and it was determined that she had a broken bone in her hand. The father also explained that, on another occasion, the mother had taken Emma to the doctor and Emma was diagnosed with a urinary-tract infection. He said Emma had not complained of any symptoms to him. Finally, he agreed that he had a strained relationship with Max.
After hearing ore tenus evidence, the trial court concluded that a change in Emma’s custody would not materially promote her best interests. The trial court was in the best position to hear and weigh the disputed testimony in this case. We determine that the trial court did not exceed its discretion by refusing to transfer the custody of Emma to the mother because its judgment could be reasonably supported by the evidence presented by the father. See Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981).

The Modification of the Mother’s Child-Support Obligation

The mother asserts that the trial court erred by failing to properly modify her child-support obligation. The record on appeal contains the following documentary evidence: the mother’s CS-41 “Child-Support-Obligation Income Statement/Affidavit” that was executed and notarized on September 7, 2010, the father’s CS-41 “Child-Support-Obligation Income Statement/Affidavit” that was executed and notarized on September 4, 2011, and a CS-42 “Child-Support Guidelines” form prepared by the trial court on October 4, 2011. Although both children were still minors, Emma was the only child listed on the trial court’s CS^42 form; on that form, the mother is shown as being obligated to pay $345.18 per month in child support to the father, but the father is not shown as being obligated to pay any child support to the mother, even though the mother was awarded custody of Max on October 4, 2011. Although the trial court’s October 4, 2011, judgment effected a split-custody award, there is nothing in the record to indicate that the father is obligated to pay any child support to the mother, see Rule *853 32(B)(9), Ala. R. Jud. Admin., and, in his brief to this court, the father admits that he was not ordered to pay child support. Because it appears that the trial incorrectly computed the child-support award, we reverse the judgment insofar as it relates to the trial court’s computation of the parties’ child-support obligations, and we remand the cause to the trial court to render a judgment in accordance with Rule 32(B)(9).

The Award of $3,000 to the Father

Although it is not entirely clear, we discern from the parties’ testimony that, at the time of the divorce, the parties had debts on at least three joint credit-card accounts. According to the parties’ testimony, the trial court made the father responsible for the debt on the parties’ Discover credit card, and it made the mother responsible for the debts on the parties’ U.S. Bank credit card and the parties’ Belk credit card.[4] Although the exact date is disputed, it is undisputed that on some date shortly before or after the divorce judgment was entered the mother transferred $3,000 of the U.S. Bank account debt and $1,400 of the Belk account debt to the Discover account. The father said the transfers, including fees, amounted to $4,620. At the time of the trial, the father said that he had paid the minimum payment on the Discover account for approximately one year.
In her brief, the mother offers no applicable support for her argument that she should not be required to pay the father an award of $3,000. She provides one citation to this court, Stack v. Stack, 646 So.2d 51 (Ala.Civ.App.1994), for its clarification of the standard of review of a judgment of civil contempt. We determine that, in violation of Rule 28(a)(10), Ala. R.App. P., the mother has failed to cite any authority to support a conclusion that the trial court erred by requiring her to pay the father $3,000. Thus, we will not further entertain this argument.

The Denial of Postminority Educational Support for Max

“Generally, the decision whether to award postminority educational support is within the discretion of the trial court after consideration of the factors set out in Ex parte Bayliss, 550 So.2d 986, 987 (Ala.1989). Gabel v. Lores, 608 So.2d 1365, 1366 (Ala.Civ.App.1992). When the evidence regarding those factors is in conflict, the trial court’s factual findings are presumed correct. Abernathy v. Sullivan, 676 So.2d 939, 941 (Ala.Civ.App.1996). However, the trial court’s legal conclusions and its application of the law to the facts are not clothed with such a presumption; review of those matters is de novo. Henderson v. Henderson, 978 So.2d 36, 39 (Ala.Civ.App.2007).”
Goetsch v. Goetsch, 66 So.3d 788, 790 (Ala.Civ.App.2011).
The factors that a trial court must consider regarding an award of postminority educational support are set out in Ex parte Bayliss, 550 So.2d 986, 987 (Ala.1989). The factors are “all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child’s commitment to, and aptitude for, the requested education.” Id. In addition, a trial court may also consider “the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child’s relationship with *854 his parents and responsiveness to parental advice and guidance.” Id.
In this case, the record contains evidence pertinent to the factors regarding Max’s commitment to and aptitude for a college education, the standard of living he might have enjoyed had the family unit been preserved, and the strained relationship between Max and the father. The record also contains some evidence pertaining to the parties’ respective financial resources. However, the record does not contain evidence indicating the estimated costs of Max’s tuition, books, room, and board.
It is undisputed that Max is an excellent student. Max testified that he desired to attend the University of Alabama and that he intended to major in business. He said that he had completed a standardized college-entrance test, that he had “sent his transcripts,” and that he intended to apply for admission and for scholarships, but, he said, it was not yet the appropriate time to apply. It is undisputed that Max had neither applied to nor been accepted to the University of Alabama or to any other institution. At the December 7, 2011, hearing on the mother’s postjudgment motion, the trial court rightly stated: “He’s not applied. He’s not been accepted. We don’t know what scholarships are. We don’t even know what expenses are. In fact, we don’t even know exactly which college. There’s no way in the world I could award any post-minority support on that.” We cannot conclude that the trial court erred by refusing to award postmi-nority educational support because the mother’s attorney failed to provide evidence to the trial court indicating the anticipated expenses of Max’s education.
However, the mother argues that the trial court erred in failing to reserve jurisdiction over the issue of postminority educational support. We agree.[5] When a child is nearing the age of majority, a trial court should reserve jurisdiction to consider the issue of postminority educational support.
A petition seeking postminority educational support must be filed before the child reaches 19 years of age or the trial court lacks jurisdiction to act upon the petition.[6] Bayliss, 550 So.2d at 987 (a trial court has jurisdiction, “[i]n a proceeding for dissolution of marriage or a modification of a divorce judgment, [to] award sums of money out of the property and income of either or both parents for the post-minority education of a child of that dissolved marriage, when application is made therefor ... before the child attains the age of majority ” (emphasis added)). Moreover, a trial court may entertain a petition for postminority educational support filed after a child reaches the age of 19 if a proper party has previously timely petitioned for such support and the trial court has reserved jurisdiction on the issue. See Langdale v. Baty, 673 So.2d 456, 457 (Ala.Civ.App.1996).
*855 We recognize that this court has provided little guidance to the trial courts concerning whether or when to reserve jurisdiction over the issue of postmi-nority educational support. In Britt v. Britt, 684 So.2d 1325, 1326 (Ala.Civ.App.1996), this court stated that, “[w]hen a parent files a petition for post-minority educational] support, a court should: (1) grant the petition or (2) deny the petition and reserve jurisdiction.” In Britt, the trial court had earlier reserved jurisdiction over the issue of postminority educational support, thus permitting it to consider that issue anew upon the filing of the mother’s second petition, despite the fact that the child had reached the age of 19. Britt, 684 So.2d at 1326-27. Britt has been cited as authority for the principle that a trial court should reserve jurisdiction when it denies a petition for postminority educational support only once, in Akridge v. Akridge, 738 So.2d 1277, 1279 (Ala.Civ.App.1999). In Abridge, this court reversed the trial court’s judgment refusing to award post-minority educational support and ordered the trial court to reserve jurisdiction over the issue for future consideration when the trial court had based its denial of postmi-nority educational support on the fact that the child had not yet reached the age of majority. In situations where a child is approaching 19 years of age, a trial court should reserve the issue so that its jurisdiction to consider awarding postminority educational support will not be lost before the parent seeking the support on the child’s behalf is able to present the appropriate evidence. According to the record, Max reached 19 years of age on October 12, 2012, while this matter was still pending on appeal. Therefore, we remand the cause to the trial court with the instruction that it enter an order reserving jurisdiction over the issue of postminority educational support for Max.
In conclusion, we determine that the trial court did not err by (1) denying the mother’s motion to compel the father to produce his cellular-telephone records, (2) refusing to hold the father in contempt regarding the property division, (3) refusing to modify the custody of Emma, or by (4) awarding a judgment in the amount of $8,000 to the father. We reverse the judgment insofar as it relates to the trial court’s computation of the parties’ child-support obligations, and we remand the cause to the trial court to render a judgment in accordance with Rule 32(B)(9), Ala. R. Jud. Admin. We further reverse the judgment insofar as it failed to reserve jurisdiction to grant or deny an award of postminority educational support for Max, and we remand the cause to amend the judgment to reserve jurisdiction over the issue for future consideration.
APPLICATION FOR REHEARING GRANTED; OPINION OF SEPTEMBER 21, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Rule 61, Ala. R. Civ. P., states, in its entirety:
"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or fer setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which *850 does not affect the substantial rights of the parties.”

. The father also testified that, because of an allegation that he had inappropriately touched Emma, he had been investigated by the Department of Human Resources and that the report of that investigation had resulted in a finding of "not indicated.”

. When questioned, Kathy Hutchins, the school counselor at Emma’s school, agreed that the mother and the father were "fairly involved parents.” Hutchins said that she had no academic concerns about Emma.

. The Belk credit card is also referred to in the record as the GE Money Bank card, the GE card, the GEMB card, the Belk/GE Money Bank card, and the GEMB/OLDN card.

. This court has cautioned that it "will eventually move toward a policy in which it will no longer remand these matters to the trial court for the taking of additional evidence” when the party requesting postminority educational support has failed to meet his or her burden of proof. Taylor v. Taylor, 991 So.2d 228, 235 n. 2 (Ala.Civ.App.2008). Two members of the court, including the author of this opinion, have advocated that the time has already come for the court to move to that policy. Id. at 237-38 (Thomas, J., concurring in part and dissenting in part, joined by Moore, J.).

. Apparently, the mother labored under a false belief that her request for postminority educational support for Max was required to be filed before he reached 18 years of age rather than our legislatively prescribed age of majority — 19 years of age.