953 So.2d 1252 (2006)
Eric B. SHEELEY
v.
Carol Sheeley CHAPMAN.
Ex parte Eric Sheeley.
(In re Eric Sheeley
v.
Clayton K. Taylor).
2040960 and 2040965.
Court of Civil Appeals of Alabama.
September 8, 2006.
*1253 Jerry M. Blevins, Montgomery, for appellant/petitioner Eric B. Sheeley.
Submitted on appellant's brief only in case no. 2040960.
Lynne R. Thrower and K. David Sawyer, Administrative Office of Courts, Montgomery, for respondent Judge Clayton K. Taylor in case no. 2040965.
BRYAN, Judge.
These consolidated cases arise from a postdivorce proceeding. In case no. 2040960, Eric B. Sheeley ("the father") appeals the judgment entered in that postdivorce proceeding insofar as it: (1) ordered him to pay postminority support in the amount of $425 per month; (2) ordered the collection of those payments through an income-withholding order; (3) failed to terminate the father's child-support payments upon his daughter Britney's reaching the age of majority; and (4) failed to terminate, upon Britney's reaching the age of majority, the income-withholding order by which the father's child-support payments were collected.
*1254 We reverse the trial court's judgment in case no. 2040960 insofar as it: (1) ordered the collection of the father's postminority-support payments through an income-withholding order; (2) failed to terminate the father's child-support payments upon Britney's reaching the age of majority; and (3) failed to terminate, upon Britney's reaching the age of majority, the income-withholding order by which the father's child-support payments were collected. In all other respects, we affirm the judgment.
In case no. 2040965, the father petitioned this court for a writ of mandamus ordering the trial court to terminate the income-withholding order by which the father's child-support payments were collected. Before taking case no. 2040960 under submission, we treated the petition for a writ of mandamus as a motion for a stay of the income-withholding order and issued the stay. Our reversal in case no. 2040960 of the trial court's judgment insofar as it failed to terminate the income-withholding order by which the father's child-support payments were collected renders the father's request for relief in case no. 2040965 moot. Accordingly, we dismiss that case as moot.
The father and Carol Sheeley Chapman ("the mother") divorced in 1989. They had one child, a daughter named Britney, who was born in 1986. The divorce judgment awarded the mother primary physical custody of Britney, ordered the father to pay child support, and ordered the collection of the child-support payments through an income-withholding order.
In July 2004, the father petitioned the trial court to modify the divorce judgment to award him primary physical custody of Britney. The mother answered the father's petition and counterclaimed for an award of postminority educational support. Thereafter, the father answered the mother's counterclaim.
When the case was called for trial on February 24, 2005, the father orally abandoned his claim for primary physical custody of Britney. The trial court then received evidence ore tenus regarding the mother's counterclaim seeking an award of postminority support.
On May 31, 2005, the father moved the trial court to terminate, upon Britney's reaching the age of majority, the income-withholding order by which his child-support payments were collected. The mother opposed the father's motion on the ground that the income-withholding order would be needed to collect any postminority support the trial court might award.
On June 24, 2005, the trial court entered a written judgment. In pertinent part, that judgment stated:
"During trial, the parties stipulated to Britney Sheeley's aptitude for attendance at college, one of the factors enumerated in Ex parte Bayliss, 550 So.2d 986, 995 (Ala.1989), and its progeny. The court notes that the petition was filed prior to [Britney's] reaching the age of majority and prior to her attending college at Jacksonville State University in the fall of 2004. The testimony showed that Britney began attending college full time at Jacksonville State University in the fall of 2004 and continued attending college full time in the Spring of 2005, seeking a degree in nursing in her pursuit of becoming a registered nurse. Due to the distance involved in traveling to and from Jacksonville State, [Britney] lives in an apartment closer to campus. Her expenses are approximately $600 per month for rent and utilities, $100 per *1255 month for food and $91.00 per month for books. An unspecified amount would cover varying school fees and gasoline to and from school. The only testimony stated that, prior to the move, the child support of more than $400 per month did not always cover gasoline, however, [Britney] was commuting to and from her home in Alexander City prior to her move closer to campus at that time.
"The testimony shows that [the father] has sufficient separate estate, earning capacity and income to pay for one-half of the estimated amount of [Britney] basic expenses while attending college. The Court heard testimony concerning the strained relationship between Britney Sheeley and her father, and does not find this fact to have any bearing on the issue of post-minority support, as [the father's] own actions and conduct have contributed to the strain between he and his child.
"Based on the foregoing, IT IS HEREBY ORDERED AND ADJUDGED that the petition for post-minority support filed by [the mother] is granted. The Court finds that Britney Sheeley has the commitment and aptitude for a college education, and that [the father] shall provide post-minority support to [the mother] in the amount of $425.00 per month. The Court finds that this amount will not put an undue hardship on the father and orders that said post-minority support shall be paid every month, beginning with September, 2004 while [Britney] is enrolled in school and continuing until and including August of 2008 or until Britney Sheeley receives a four year bachelor's degree, whichever comes first, so long as she is carrying a full load of classes each regular school term and maintaining an overall GPA of 2.5. Payment is to be made each month and shall be payable via income deduction order, with the arrearage to be deducted at the rate of an additional $75.00 per month until paid in full. [The father] is entitled to proof of Britney's enrollment and completion of a full load of classes each semester. Within 30 days of registration, [the mother] shall provide to [the father] proof that Britney is enrolled in classes on a full-time basis. Within 30 days of receipt, [the mother] shall provide to [the father] a copy of Britney's report card. Within 30 days of this Order, [the mother] shall provide copies of Britney's report cards for the last two semesters.
"IT IS FURTHER ORDERED AND ADJUDGED that [the father] is required to place Britney Sheeley on his health insurance plan within 30 days of this Order and to maintain health insurance on her until she receives a bachelor's degree or ceases to attend college full time, or reaches the age of 24, whichever [occurs] first. [the mother] must submit all documentation that the health insurance administrator may require to ensure prompt coverage. [The father] is to deliver all insurance cards for Britney Sheeley directly to [the mother] upon receipt."
The judgment neither terminated the father's child-support payments upon Britney's reaching the age of majority nor terminated, upon Britney's reaching the age of majority, the income-withholding order by which the father's child-support payments were collected.
On July 11, 2005, the trial court entered a written order denying the father's May 31, 2005, motion seeking an order terminating, upon Britney's reaching the age of majority, the income-withholding order by which the father's child-support payments *1256 were collected. Also on July 11, 2005, the trial court entered an income-withholding order to collect the postminority support of $425 per month the trial court had awarded the mother in the judgment entered on June 24, 2005.
On July 18, 2005, the father moved the trial court to alter, amend, or vacate the judgment entered on June 24, 2005. Among other things, that motion sought an amendment of the judgment to terminate the father's child-support payments upon Britney's reaching the age of majority and to terminate, upon Britney's reaching the age of majority, the income-withholding order by which the father's child-support payments were collected. On August 3, 2005, the trial court denied the father's postjudgment motion. The father then appealed to this court. The father also filed a separate petition seeking a writ of mandamus ordering the trial court to terminate the income-withholding order by which the father's child-support payments were collected. As noted above, before taking the father's appeal under submission, we treated his petition seeking a writ of mandamus as a motion seeking a stay of the income-withholding order by which his child-support payments were collected, and we issued a stay of that income-withholding order.
On appeal, the father first argues that the trial court erred in ordering him to pay postminority support because, he says, the payment of postminority support would cause him undue hardship.
"In Penney v. Penney, 785 So.2d 376, 379 (Ala.Civ.App.2000), this court stated:
"`The trial court must also determine if the noncustodial parent has "sufficient estate, earning capacity, or income to provide financial assistance without undue hardship." Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ. App.1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id.'"
Walker v. Walker, 917 So.2d 144, 147 (Ala. Civ.App.2005).
"Because the trial court received evidence ore tenus, we must presume its judgment is `correct unless it is so unsupported by the evidence that it is plainly and palpably wrong.'" Id. (quoting Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990)). The father testified that he is employed by Honda Manufacturing of Alabama as an assembly line worker and that he makes $22 per hour. He testified that his net income, after payment of taxes, is $2,964 per month and that he must support his common-law wife and their two children. According to the father, his monthly expenses exceed his net monthly income by $1,910.11. By finding that the father had the financial ability to pay $425 per month in postminority support, the trial court implicitly found that the father's testimony that his monthly expenses exceeded his net monthly income was not credible. "In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief." Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993). This court cannot substitute its judgment regarding the credibility of the witnesses when the trial court receives their testimony in an ore tenus proceeding. See Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000) ("[T]he trial judge, who heard oral testimony from the parties and from other witnesses, was best able to determine the *1257 credibility to be afforded that testimony. Appellate courts can only review the record. Consequently, the trial court must be left with some discretion to determine which witnesses it deems more credible than others. Once the trial court makes that determination, it is not for the reviewing court to substitute its judgment for that of the trial court." (emphasis added)). Therefore, we cannot hold that the trial court erred in finding that the award of $425 in postminority support would not cause the father undue hardship.
The father also argues that, even if the trial court did not err in ordering him to pay postminority support, it erred in ordering him to pay $425 per month in postminority support because, he says, the evidence did not support such a large amount of postminority support. Specifically, he argues: (1) that the evidence established only $632.50 per month in expenses that qualified for postminority support; (2) that the $632.50 per month of qualified expenses should be reduced by $400 per month because Britney testified that she hoped to earn that amount while she was attending college; and (3) that he should be required to pay only $150 of the remaining balance of $232.50.
In connection with his argument that the evidence established only $632.50 in expenses that qualify for postminority support, the father lists the following monthly expenses as the ones that qualify for postminority support:

 books  $112.50
 rent  $260.00
 cable television  $ 60.00
 credit card  $ 25.00
 water  $ 35.00
 electric  $ 60.00
 cell phone  $ 60.00
 Internet  $ 20.00
 _______
 Total $632.50

However, the father's list of monthly expenses does not include tuition, which is an expense that qualifies for postminority support. See Walker v. Walker, 917 So.2d at 148. The evidence established that the mother must pay $300 per semester for Britney's tuition. Because a semester is four months long, $75 per month ($300 divided by 4 equals $75) for tuition must be added to the father's list of expenses. Thus, the father's list of permissible expenses and Britney's tuition total $707.50 per month.
We next consider the father's argument that the amount of the expenses that qualify for postminority support must be reduced by the $400 per month in net income Britney hoped to earn in the future. In Ex parte Bayliss, 550 So.2d 986 (Ala.1989), the supreme court held that a trial court, in deciding whether to award postminority support, "shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child. . . ." 550 So.2d at 987. However, that holding is not tantamount to a holding that a trial court, in computing the amount of postminority support to award, must reduce the total amount of expenses that qualify for postminority support by the amount of the income the child hopes to earn in the future. Consequently, there is no merit to the father's argument that the trial court erred because, in computing the amount of his postminority-support obligation, it did not reduce the amount of the expenses that qualified for postminority support by the $400 per month in net income Britney hoped to earn.
The father's argument that he should have been required to pay only $150 per month in postminority support is premised upon his arguments that only $632.50 in *1258 expenses qualified for postminority support and that that amount should have been reduced by the $400 per month in net income Britney hoped to earn. Because the arguments on which it is premised have no merit, the father's argument that he should have been required to pay only $150 per month in postminority support likewise has no merit.
The evidence established that the father's net income was $2,964 per month. The evidence established that the mother's gross income was $1,600 per month. The evidence established that Britney had no income of her own at the time of trial, although she hoped to obtain a job in the future. Given the evidence regarding the cost of Britney's tuition and other necessaries and the evidence regarding the parents' and Britney's financial resources, we cannot hold that the trial court erred in awarding the mother $425 per month in postminority support.
The father also argues that the trial court erred in ordering the collection of his postminority-support payments through an income-withholding order because, he says, such an income-withholding order violates this court's holding in W.L.S. v. K.S.S.V., 810 So.2d 777 (Ala.Civ. App.2001), that § 30-3-60, Ala.Code 1975, authorizes an income-withholding order only while the child is a minor. In W.L.S. v. K.S.S.V., the child had reached the age of majority before the mother, who was the custodial parent, sought to recover a child-support arrearage from the father. After the trial court assessed an arrearage and issued an income-withholding order in order to collect the arrearage, the father appealed to this court. We stated:
"The father argues that § 30-3-60(8), Ala.Code 1975, allows an income-withholding order to be used only to order support for a minor child, and that because the parties' daughter was no longer a minor when the mother initiated her action to collect the child-support arrearage, the trial court erred in issuing an income-withholding order. We agree.
"Section 30-3-60, Ala.Code 1975, contains definitions that pertain to withholding orders for child support. See § 30-3-60, Ala.Code 1975. Section 30-3-60(8) defines `Support or Support Order' as `[s]upport of a minor child and spousal support when such spousal support is collected by the Department of Human Resources. . . . '
"In construing a statute, this court looks to the plain meaning of the words used by the Legislature. Our supreme court has said:
"`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'

"Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998)(quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
"`It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret *1259 the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.'

"DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala. 1998). Although we have found no cases that discuss whether an income-withholding order can be used to collect child-support arrearage after the child for whom the support was intended has reached the age of majority, our supreme court has held that the term `child-support obligation' does not encompass a child-support arrearage. Ex parte State ex rel. Daw, . . . 786 So.2d 1134 [(Ala.2000)]. . . .
". . . .
"Considering that the mother filed her petition to collect the child-support arrearage after the parties' daughter had reached the age of majority and in light of the plain language in § 30-3-60(8), which provides that an income-withholding order may be used for support of a minor child, we conclude that the trial court erred when it ordered that the child-support arrearage be paid through income withholding. See Ex parte State ex rel. Daw, supra (holding that one to whom a child-support arrearage is owed becomes a judgment creditor who may then pursue the typical means of collection that are available to the holder of any judgment)."
810 So.2d at 779-80 (footnote omitted).
Based on the holding in W.L.S. v. K.S.S.V. that § 30-3-60 authorizes income-withholding orders only for the collection of child support while the child is a minor, the trial court in the case now before us erred in ordering the collection of postminority support through an income-withholding order.
Finally, the father argues that the trial court erred in failing to terminate, upon Britney's reaching the age of majority, the father's child-support payments and the income-withholding order by which those payments were collected. Subject to two exceptions, a noncustodial parent has no duty to support a child after the child reaches the age of majority. See Ex parte Bayliss, 550 So.2d at 991-92. The two exceptions are: (1) that a noncustodial parent has a duty to continue supporting a mentally or physically disabled child who continues to be disabled after reaching the age of majority; and (2) that a noncustodial parent has a duty to provide postminority educational support ordered by a court pursuant to a petition seeking such support that is filed before the child reaches the age of majority. See Bayliss. Britney is not disabled; therefore, the first exception did not justify the trial court's failure to terminate the father's child-support payments upon Britney's reaching the age of majority. The trial court made a separate award of postminority support; therefore, the second exception did not justify the trial court's failure to terminate the father's child-support payments upon Britney's reaching the age of majority. Thus, the trial court erred in failing to terminate the father's child-support payments upon Britney's reaching the age of majority. Moreover, because the father's duty to pay child support terminated upon Britney's reaching the age of majority, the trial court also erred in failing to terminate, upon Britney's reaching the age of majority, the income-withholding order by which *1260 the father's child-support payments were collected.
In case no. 2040960, we reverse the trial court's judgment insofar as it: (1) ordered the collection of the father's postminority-support payments through an income-withholding order; (2) failed to terminate the father's child-support payments upon Britney's reaching the age of majority; and (3) failed to terminate, upon Britney's reaching the age of majority, the income-withholding order by which the father's child-support payments were collected. In all other respects, we affirm the judgment. Finally, we remand the case to the trial court for the trial court to correct the errors in its judgment.
Our reversal, in case no. 2040960, of the trial court's judgment insofar as it failed to terminate the income-withholding order by which the father's child-support payments were collected renders the father's request for relief in case no. 2040965 moot. Accordingly, we dismiss that case as moot.
The father's request for an attorney's fee and costs is denied.
2040960  AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
2040965  DISMISSED.
CRAWLEY, P.J., and THOMPSON, J., concur.
PITTMAN, J., concurs in the result, without writing.
MURDOCK, J., concurs in the result, with writing.
MURDOCK, Judge, concurring in the result.
I read § 30-3-60(8), Ala.Code 1975, as explaining that the term "support" means payments applicable to the costs and expenses associated with the maintenance and rearing of a child during their minority and a "support order" as an order providing for such support. The fact that such support is not collected until after the child reaches the age of majority does not in my reading of § 30-3-60(8) take the support or the support order out from under the ambit of § 30-3-60(8). The purpose of support payments made after a child reaches the age of majority may still relate to the costs and expenses of maintaining and raising that child during his or her minority. The fact that the custodial parent was forced to "advance" such expenses during the minority of the child and then seek reimbursement for them after the child reaches the age of majority does not make such resulting payments from the noncustodial parent any less applicable in the eyes of the law to the maintenance and rearing of the child when he or she was a minor. For this reason, I dissented in W.L.S. v. K.S.S.V., 810 So.2d 777 (Ala. Civ.App.2001), and I adopt herein the further analysis of this issue set forth in that dissenting opinion. See W.L.S., 810 So.2d at 781-84 (Murdock, J., concurring in the result in part and dissenting in part).
My difference with the main opinion in W.L.S., however, does not bear on the appropriate result in the present case. Indeed, the present case merely serves to highlight the distinction I attempted to draw in my dissenting opinion in W.L.S. Specifically, unlike W.L.S., the present case involves support payments applicable to the college expenses of a non-minor child; W.L.S. involved support payments, even though collected after the child became an adult, applicable to the rearing of that child when he or she was a minor. I therefore find the holding of W.L.S., as well as the issue of disagreement between *1261 myself and the remainder of the court in that case, to be inapposite here.
I concur in the result in the present case because the support payments at issue are applicable to costs and expenses related to the education of a non-minor and therefore do not constitute "support" within the meaning of that term intended by the Legislature in § 30-3-60(8).