THOMPSON, Presiding Judge.
The State Department of Human Resources (“DHR”), on behalf of J.B. (“the mother”), filed in the Bibb Juvenile Court *1189 (“the juvenile court”) a petition seeking to have T.K.W. (“the father”) held in contempt for his failure to pay a child-support arrearage as required by a November 20, 2009, judgment of the juvenile court. The father answered the contempt petition and argued that he was unable to pay the arrearage and had not wilfully refused to do so.
On October 24, 2011, the juvenile court transferred the matter to the domestic-relations docket of the Bibb Circuit Court (“the circuit court”). In December 2011, the father filed a motion asking that the action purportedly still pending in the juvenile court be “closed.” On December 8, 2011, the juvenile court entered an order granting that motion and stating that the action was “closed to further review” in the juvenile court. However, on February 22, 2012, the circuit court determined that it lacked subject-matter jurisdiction over the contempt action, and it ordered that the action be transferred back to the juvenile court. Also on February 22, 2012, the juvenile court entered an order, apparently in recognition of the transfer from the circuit court, that “reinstated” the contempt action in that court. We note that the same judge who presided over the contempt action in the juvenile court considered the action in the circuit court.
On February 23, 2012, the father filed in the juvenile court a “motion to set aside the order dated November 20, 2009,” which, as discussed infra, we treat as a motion filed pursuant to Rule 60(b), Ala. R. Civ. P., and he later amended that motion; in both the original motion and the amended motion, the father argued that the November 20, 2009, judgment was void. See Rule 60(b)(4). Later, the father moved that the juvenile-court judge recuse himself from the contempt action. On March 14, 2012, the juvenile-court judge denied the motion to recuse. On May 9, 2012, the juvenile court denied the father’s Rule 60(b) motion.
The juvenile court conducted a hearing on the merits of DHR’s contempt action. On May 17, 2012, the juvenile court entered a judgment determining the father to be in contempt and ordering, among other things, that an income-withholding order (“IWO”) in the amount of $500 per month be issued to the Social Security Administration with regard to the father’s income from that agency. In reaching its May 17, 2012, judgment, the juvenile court made the following factual findings:
“1. The [father] was ordered by this court on the 20th day of November 2009, to pay the amount of $500 per month until his child-support arrearage obligation was met. Th[at judgment] was entered pursuant to an agreement between the parties at which the [father] was represented by counsel.
“2. The [father] has failed to comply with this Order of Support for at least the past six months and is $15,155.56 in arrears and interest as of the 9th day of May 2012.
“3. The [father] receives in excess of $5,300 per month from Social Security Disability, Veteran’s Administration Pension and‘CRSC.’[1]
“4. The [father’s] testimony indicated that he is in substantially the same financial situation currently as he was in November of 2009 when he entered into the agreement to pay $500 per month toward the child-support arrearage owed by him, and his testimony further demonstrates that he has substantial debts *1190 that he has willingly incurred and that he has continued to incur, some of which are even incurred month to month, which could have funded his support payments due pursuant to his agreement and the order of this court.
“5. The [father’s] failure to make the required payments is due to his willful neglect and is NOT due to inability to pay.”
(Capitalization in original.) The father filed a postjudgment motion, which the juvenile court denied. The father timely appealed.
The record does not indicate whether the mother and the father were ever married or the date on which the father was first ordered to pay child support. The record indicates that the father’s most recent child-support obligation for the child he had with the mother was $224 per month. The child had reached the age of majority at the time the juvenile court entered the November 20, 2009, judgment that DHR is seeking to enforce.
The father testified that he is a disabled veteran and that he is no longer able to work. The father testified that he suffered a traumatic brain injury and that his wife is his guardian and manages his financial affairs. The father stated that his wife was aware of the $500-a-month payment required by the November 20, 2009, judgment.
The evidence in the record on appeal indicates that the father’s net monthly income is approximately $5,300; that amount includes $1,416 in Social Security disability benefits. The father testified that his monthly living expenses total approximately $5,000 per month. The father insisted that he could not afford to pay the $500 per month ordered in the November 20, 2009, judgment. We note that, after the entry of the November 20, 2009, judgment, DHR obtained a garnishment of the father’s government retirement account, and, pursuant to that garnishment, it receives a $124 monthly payment toward the father’s child-support arrearage. The father included the amount of that garnishment in his calculation of his monthly expenses.
DHR cross-examined the father regarding the expenses he claimed on his estimate of monthly expenses. In addition to payments for five policies of insurance, including life insurance, the father represented he has to repay several finance companies for various loans, including a purchase of furniture. The father denied that he ate at restaurants often, but DHR’s cross-examination called that testimony into question. On DHR’s questioning, the father admitted that his wife’s monthly income of $900 in Social Security disability benefits is used, in addition to his own income, to meet the approximately $5,000 in household monthly expenses to which he testified.
The father testified that since the entry of the November 20, 2009, judgment, he has started receiving retirement income of approximately $250 a month. Otherwise, the father admitted that his financial situation is much the same as it was in November 2009, when he agreed to pay $500 monthly toward the arrearage and the juvenile court incorporated that agreement into the November 20, 2009, judgment.
The father first argues on appeal that the juvenile court could not issue an IWO to collect a child-support arrearage because the child has reached the age of majority. The father cites W.L.S. v. K.S.S.V., 810 So.2d 777 (Ala.Civ.App.2001), and Sheeley v. Chapman, 953 So.2d 1252 (Ala.Civ.App.2006), in support of his argument on appeal. Both of those cases have been superseded by statute. See § 30-3- *1191 60 through -71, Ala.Code 1975. As this court recently explained:
“At one time, Alabama law did not allow the use of an IWO as a tool to collect unpaid child-support obligations from nonpaying obligors after the children who had been the subject of the underlying child-support awards had attained the age of majority. See W.L.S. v. K.S.S.V., 810 So.2d 777, 780 (Ala.Civ.App.2001), and Sheeley v. Chapman, 953 So.2d 1252, 1259 (Ala.Civ.App.2006). However, the statute relied upon in both W.L.S. and Sheeley, Ala.Code 1975, § 30-3-60, was amended in 2009 so as to allow for the issuance of IWOs for ‘enforcement post-majority of arrearages accrued during minority’ as well as accrued interest. See Ala.Code 1975, § 30-3-60(10)e.”
Robbins v. State ex rel. Priddy, 109 So.3d 1128, 1129 n. 1 (Ala.Civ.App.2012). Section 30-3-60 now allows the issuance of an IWO to collect a child-support arrearage after the child has reached the age of majority. Therefore, we cannot say that the father has demonstrated error with regard to this issue.
The father also contends that the IWO was not valid because, he says, an IWO may be issued only to an “employer” and, he contends, the Social Security Administration is not his employer. However, the father failed to assert that argument before the juvenile court, and it cannot be raised for the first time on appeal. Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992) (“Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court.”).
The father next argues that the juvenile court could not issue an IWO in the amount of $500 a month against his income from the Social Security Administration because that amount is greater than 25% of the amount of his monthly Social Security benefits. In making that argument, the father cites § 6-10-7, Ala. Code 1975, which provides that no more than 25% of a source of income may be subject to garnishment. In McNabb v. State ex rel. Rhodes, 890 So.2d 1038 (Ala.Civ.App.2003), this court considered the interplay between § 6-10-7 and § 30-3-67, which provides that IWOs have priority over other garnishments and that up to 50% of an obligor’s income may be subject to withholding pursuant to an IWO.[2] In McNabb, supra, the trial court held that an obligor’s workers’ compensation award could be subject to multiple IWOs that totaled 50% of the amount of the settlement proceeds. This court affirmed, holding that IWOs for child support are not subject to the 25% limitation on a garnish *1192 ment set forth in § 6-10-7. This court then explained:
“To be clear, the federal Consumer Credit Protection Act provides that an order for support shall not exceed 50% of an individual’s disposable earnings if that individual is currently supporting a spouse or dependent child and that the order of support shall not exceed 60% of an individual’s disposable earnings if that individual is not currently supporting a spouse or dependent child. 15 U.S.C. § 1673(b)(2).[1] Section 30-3-67, Ala.Code 1975, provides that ‘[a]ny order for income withholding issued pursuant to this article may exceed the statutory maximum amounts prescribed in Section 6-10-7 for garnishment proceedings in Alabama, but such order ... may not exceed the maximum statutory amounts prescribed under federal law for garnishments issued to enforce support obligations.’ Therefore, the trial court correctly concluded that 50% of McNabb’s worker’s compensation settlement proceeds were subject to the child-support withholding orders, and we affirm the trial court’s judgment.
McNabb v. State ex rel. Rhodes, 890 So.2d at 1042-43.
The father receives $1,416 per month in Social Security disability benefits. The IWO at issue in this case is for $500 a month, an amount that constitutes approximately 35% of the father’s monthly Social Security disability income. Accordingly, under § 30-3-67 and McNabb, supra, the juvenile court had the authority to issue the IWO in the amount of $500 a month to the Social Security Administration. The father has failed to demonstrate error with regard to this issue.
The father next argues that the juvenile-court judge erred in denying his motion to recuse. Initially, we note that the denial of a motion to recuse may be reviewed at the time of an appeal of a final judgment on the merits. Ex parte Crawford, 686 So.2d 196 (Ala.1996). The father based his motion to recuse on the fact that the same judge presided over this action as a juvenile-court judge and as a circuit-court judge during the brief period that the action was transferred to the circuit court. In support of his argument, the father cites only the title of Canon 2 of the Alabama Canons of Judicial Ethics — “A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities” — and Canon 3.c.(l), which provides, in part: “A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned .... ”
As DHR contends in its brief submitted to this court, however, the father fails to explain, other than citing “common sense,” how the juvenile-court judge violated those ethical canons. Various provisions of Alabama law allow circuit-court judges to serve in juvenile courts or allow district-court judges to be appointed to serve in the circuit court. See, e.g., § 12-17-70, Ala.Code 1975, and § 12-15-103, Ala.Code 1975. The father has not alleged in his motion to recuse or in his brief on appeal any facts tending to indicate that the juvenile-court judge violated either of the Canons of Ethics cited in the father’s brief on appeal. Given the argument set forth in the father’s brief, we cannot say that the father has demonstrated error on appeal with regard to the denial of his motion to recuse.
*1193 The father next argues that the juvenile court erred in finding him in contempt of court. The father maintains that he presented “uncontroverted evidence” demonstrating that he was unable to pay the $500 monthly payment required by the November 20, 2009, judgment. The father contends that after he made such a showing, the burden then shifted to DHR to demonstrate beyond a reasonable doubt that he had the financial ability to pay. T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).
With regard to reviewing a determination that a parent is in contempt for failure to pay child support and the respective burdens of the parties in a contempt action, this court has stated:
“Whether a party is in contempt of court is a determination committed to the discretion of the trial court. See Coleman v. Coleman, 628 So.2d 698 (Ala.Civ.App.1993). To hold a party in contempt under either Rule 70A(a)(2)(C)(ii) or (D), Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order. See Carr v. Broyles, 652 So.2d 299 (Ala.Civ.App.1994). Inability to pay is a defense to a contempt action in a child-support-arrearage case. Id.
“ ‘When a parent is ordered to pay child support and fails to do so, a lack of ability to pay a delinquent amount is a complete defense to a civil contempt proceeding regarding the delinquent child support. In such a case, if the obligated parent presents evidence that [his] failure to pay the delinquency is due to financial inability, the burden then shifts to the parent to whom child support is due to prove beyond a reasonable doubt that the obligated parent is financially able to pay the amount of child support ordered. If a person is found in civil contempt because of [his] failure to pay a certain amount of money, and [he] shows that [he] is unable to pay that amount, then the contempt order must be set aside.’
“Carr v. Broyles, 652 So.2d [299,] 301-02 [ (Ala.Civ.App.1994) ] (citations omitted) (quoted in Seay v. Seay, 678 So.2d 1189, 1190 (Ala.Civ.App.1996)).”
T.L.D. v. C.G., 849 So.2d at 205.
In this case, paragraphs four and five of the juvenile court’s judgment, quoted earlier in this opinion, indicate that the juvenile court did not agree that the father had demonstrated that he was financially unable to meet the $500 monthly obligation set forth in the November 20, 2009, judgment. The juvenile court noted that the father had conceded that, at the time of the hearing in this matter, he was in the same financial situation as in November 2009, when he agreed to pay that amount. Further, the juvenile court found that, although the father claimed certain expenses, the money used to meet those claimed expenses could and should have been used to pay the amount required in the November 20, 2009, judgment. The juvenile court found that the father’s failure to pay was due to his own “neglect,” i.e., that the father chose to incur certain additional expenses rather than first meeting the requirements of the November 20, 2009, judgment. Thus, the record supports a conclusion that the father failed to present evidence demonstrating that he lacked the financial ability to pay the $500 monthly obligation required by the November 20, 2009, judgment. Accordingly, the burden did not shift to DHR to rebut his claim of financial inability to pay. Our review of the record on appeal supports the findings and conclusions set forth in the juvenile court’s judgment on this issue. Accordingly, we cannot say that the father has demonstrated that the juvenile court *1194 erred in finding him in contempt for his failure to pay the $500 monthly payment set forth in the November 20, 2009, judgment.
The father last argues that the juvenile court erred in denying his February 23, 2012, “motion to set aside” the November 20, 2009, judgment. In that motion, the father argued that the November 20, 2009, judgment that DHR was seeking to enforce in the pending contempt action was void for want of subject-matter jurisdiction. The father later amended that motion to argue that the November 20, 2009, judgment was void because the action that resulted in the November 20, 2009, judgment had been dismissed before the entry of that judgment. The father maintained that during the pendency of the action that resulted in the November 20, 2009, judgment, the juvenile court had entered an order finding that the contempt allegations made in that action were moot because of the father’s recent compliance with previous orders; in that order, however, the juvenile court scheduled the pending action for a later review hearing. In his amended “motion to set aside” filed in this case, the father contended that the order finding that the previous contempt allegations were “moot” had, in effect, constituted a dismissal of the action, which, he says, nullified the juvenile court’s subject-matter jurisdiction over that action. In both the February 23, 2012, motion and the amended motion, the father sought to invalidate the November 20, 2009, judgment and thereby defeat DHR’s claim that he was in contempt for his failure to comply with that purportedly invalid judgment.
The father’s February 23, 2012, motion and his amended motion were filed well outside the time allowed for filing a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., from the November 20, 2009, judgment, and both motions cite grounds seeking relief from a judgment pursuant to Rule 60(b)(4), Ala. R. Civ. P. A motion must be interpreted by its substance rather than by its style. Ex parte Alfa Mut. Gen. Ins. Co., 684 So.2d 1281, 1282 (Ala.1996). Accordingly, we conclude that, in substance, the father’s February 23, 2012, motion and his amended motion were filed pursuant to Rule 60(b)(4), which allows for relief from a judgment that is void. Weaver v. Weaver, 4 So.3d 1171, 1172 (Ala.Civ.App.2008) (“A motion seeking relief from a judgment or order on the basis that the judgment or order is void is one filed pursuant to Rule 60(b)(4), Ala. R. Civ. P.”).
The denial of a Rule 60(b) motion is reviewed by appeal. Weaver v. Weaver, 4 So.3d at 1172; Ex parte R.S.C., 853 So.2d 228, 235 (Ala.Civ.App.2002). The juvenile court denied the father’s Rule 60(b) motion on May 9, 2012. The father had 14 days, or until May 23, 2012, to appeal the denial of his Rule 60(b) motion.[3] The father’s notice of appeal was filed June 12, 2012, and, therefore, we conclude that the father failed to timely appeal the issues he raised in his Rule 60(b) motion. Accordingly, as to this issue, the father’s appeal is dismissed.
We note that our review of the record on appeal indicates that the issue of the validity of the November 20, 2009, *1195 judgment was not an issue tried by the implied consent of the parties during the hearing in this matter. See Rule 15(b), Ala. R. Civ. P. (“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”). The father did assert, in his May 29, 2012, postjudgment motion, an argument that the November 20, 2009, judgment was void. However, the May 9, 2012, denial of the father’s Rule 60(b) motion had rejected that argument, and the juvenile court could not have invalidated that judgment based on an argument asserted in the May 29, 2012, post-judgment motion taken from the May 17, 2012, final judgment as to DHR’s contempt action. The father’s argument asserted in the May 29, 2012, motion constitutes an impermissible collateral attack on the earlier, November 20, 2009, judgment.
The father has failed to demonstrate error on appeal. We therefore affirm the juvenile court’s May 17, 2012, judgment as to DHR’s contempt action.
APPEAL DISMISSED IN PART; AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. "CRSC” is not identified by name in the record on appeal, but the record indicates it is a retirement account from which the father receives approximately $250 per month in income.

. Section 30-3-67, Ala.Code 1975, provides:
“Any order to withhold income issued and served upon any employer of the obli-gor pursuant to this article shall have priority over any writ of garnishment or any other state legal process against the same income of the obligor whether the writ of garnishment or other process was served prior or subsequent to the order of income withholding. Any order for income withholding issued pursuant to this article may exceed the statutory maximum amounts prescribed in Section 6-10-7 for garnishment proceedings in Alabama, but such order, including amounts taxed against the obligor as court costs, may not exceed the maximum statutory amounts prescribed under federal law for garnishments issued to enforce support obligations. Provided, if an obligor's income is subject to more than one withholding order or a current writ of garnishment for child support and a withholding order, the total amounts withheld may not exceed the statutory máximums herein prescribed and the current month's support payments shall be satisfied before any arrearages are satisfied.”

“ 1These amounts are increased to 55% and 65%, respectively, with respect to support more than 12 weeks in arrears. 15 U.S.C. § 1673(b)(2)(B).”

. The time for filing an appeal of the denial of a Rule 60(b) motion may not be extended by the filing of a postjudgment motion. Ex parte Keith, 111 So.2d 1018, 1022 (Ala.1998) ("After a trial court has denied a postjudgment motion pursuant to Rule 60(b), that court does not have jurisdiction to entertain a successive postjudgment motion to 'reconsider' or otherwise review its order denying the Rule 60(b) motion, and such a successive postjudgment motion does not suspend the running of the time for filing a notice of appeal.”).