THOMAS, Judge.
M.M. ("the father") and R.F. ("the paternal great-grandmother") seek review of the judgment dismissing their Rule 60(b), Ala. R. Civ. P., motions, which sought to have set aside the judgments entered by the Jefferson Probate Court ("the probate court") granting the petitions of K.J.Z. ("the adoptive father") and E.M.Z. ("the adoptive mother") to adopt M.R.M. and S.M. ("the children"), the children of the father and M.J.S. ("the mother"). We reverse the judgment of the probate court.
In February 2016, in case number CS-15-900438.01 ("the custody case"), the Jefferson Juvenile Court ("the juvenile court") entered a judgment awarding the paternal great-grandmother, the father, and the mother joint custody of the children pursuant to an agreement between *1146 those parties. The February 2016 judgment modified an earlier judgment of the juvenile court. The record indicates that the adoptive mother appeared in the custody case as an attorney for the father, who is her nephew.
In April 2016, the adoptive mother filed in the juvenile court verified ex parte emergency petitions for custody of each child; those petitions were assigned case number JU-16-659.01 and case number JU-16-660.01, respectively ("the dependency petitions"). In the dependency petitions, the adoptive mother alleged that the mother and the father had abandoned the children in 2014 and 2015, respectively; that the children were presently in the custody of the paternal great-grandmother; that the Department of Human Resources was investigating sexual-abuse allegations made against the paternal great-grandmother's live-in paramour, C.H.; that the paternal great-grandmother had one or more indicated cases of physical abuse relating to her abuse of one of her own children and a grandson; and that the children's paternal grandmother, Me.M., who also resided with the paternal great-grandmother, had a history of drug-related charges and had a pending criminal charge. The juvenile court held a hearing on the dependency petitions on April 11, 2016, at which the adoptive mother and the paternal great-grandmother appeared; neither the mother nor the father appeared. After the hearing, the juvenile court entered an order awarding what it described as ex parte custody of the children to the adoptive mother. The mother, the father, and the paternal great-grandmother were awarded visitation rights, and a hearing was set for June 28, 2016. Despite the allegations of abandonment the adoptive mother had relied upon in the dependency petitions, the adoptive mother, with the assistance of law enforcement, retrieved the children from the custody of the father.
On May 10, 2016, the adoptive mother and the adoptive father, armed with the ex parte custody order, filed in the probate court petitions seeking to adopt the children. In the petitions, the adoptive mother and the adoptive father indicated that the whereabouts of the mother were unknown; they listed an address for service of the father. However, the adoptive mother and the adoptive father also filed an affidavit stating that they had exhausted all known means to locate the mother and the father; as a result, the mother and the father were served by publication.[1] No notices of the adoption actions were served on the paternal great-grandmother. Thus, neither the mother, nor the father, nor the paternal great-grandmother appeared in the adoption actions or contested the proposed adoptions. The probate court entered final judgments of adoption on August 23, 2016.
On September 1, 2016, the juvenile court held a hearing in the dependency cases. On that same date it entered an order that, among other things, awarded visitation to the paternal great-grandmother, the mother, and the father. The order also indicated *1147 that the dependency cases would be set for a dependency trial, although the date of that trial was "to be determined." On or about September 12, 2016, the adoptive mother filed in the juvenile court a motion to dismiss the dependency cases, explaining in the motion that the children had been adopted and attaching the August 23, 2016, adoption judgments.
On September 23, 2016, the father and the paternal great-grandmother filed joint motions in the probate court, one in each adoption action, seeking to contest the adoptions and to have the adoption judgments set aside based, in part, on fraud they alleged had been committed on them and on the court by the adoptive mother. In addition, they contended in those motions that their due-process rights had been violated because they had not received notice of the pending adoptions. Thus, although not labeled as such, the motions were filed pursuant to Rule 60(b). See Ex parte Lang, 500 So.2d 3, 4 (Ala. 1986) (construing a motion as a Rule 60(b) motion based on its substance). On October 3, 2016, the adoptive mother moved to dismiss the Rule 60(b) motions, arguing that the contests were untimely, that the father had been properly served by publication, and that the paternal great-grandmother lacked "standing" to file contests to the adoptions.
The father and the paternal great-grandmother filed "verified" responses to the motions to dismiss; however, only the paternal great-grandmother verified the responses. In the responses, the paternal great-grandmother stated specifically that she had had custody of the children by virtue of the February 2016 judgment in the custody case and that she, therefore, was entitled to notice of the adoption actions. In addition, the father and the paternal great-grandmother presented documents purporting to be text messages between the father and the adoptive mother during April 2016, indicating that the adoptive mother had had a means of contacting the father to determine his whereabouts, and otherwise contended that the adoptive mother had committed fraud on the mother, the father, the paternal great-grandmother, and both the juvenile court and the probate court.
On February 24, 2017, the probate court, without holding an evidentiary hearing, entered a single judgment, which was entered in both adoption actions, dismissing the Rule 60(b) motions filed by the father and the paternal great-grandmother. In that judgment, the probate court stated that the paternal great-grandmother lacked "standing" to contest the adoptions and found that the father had been properly served by publication. The probate court apparently further concluded that the motions were untimely because they had been filed "outside the 14-day appeal time following a final [judgment] of adoption." Thus, the order granted the adoptive mother's motion to dismiss the Rule 60(b) motions.
As noted above, the father and the paternal great-grandmother seek review of the judgment dismissing their Rule 60(b) motions. They filed petitions for the writ of mandamus in this court on April 7, 2017. However, because review of an order denying a Rule 60(b) motion is by appeal, see T.K.W. v.State Dep't of Human Res. ex rel. J.B., 119 So.3d 1187, 1194 (Ala. Civ. App. 2013), this court has elected to treat their petitions as appeals. See Weaver v. Weaver, 4 So.3d 1171, 1173 (Ala. Civ. App. 2008).
The probate court's conclusion that the Rule 60(b) motions were untimely is clearly incorrect. The motions were filed on September 23, 2016, approximately one month after the entry of the adoption judgments. Insofar as the motions alleged *1148 that the adoptive mother had committed fraud, the motions were Rule 60(b)(3) motions, which must be filed within four months of the entry of the challenged judgments.[2] Insofar as the motions alleged that the adoption judgments should be set aside because of a lack of due process, the motions sought relief under Rule 60(b)(4) on the basis that the adoption judgments were void, see Lett v. Weaver, 79 So.3d 625, 627 (Ala. Civ. App. 2010) (construing a challenge to a lack of statutory notice as an argument that a judgment was void for lack of due process under Rule 60(b)(4) ), and a motion seeking relief from a void judgment may be brought at any time. Ex parte McCrory & Williams, Inc., 155 So.3d 1018, 1020 (Ala. Civ. App. 2014). The motions were timely filed.
" 'The standard of review on appeal from an order granting [or denying] relief under Rule 60(b)(4), Ala. R. Civ. P. ("the judgment is void"), is not whether the trial court has exceeded its discretion. When the decision to grant or to deny relief turns on the validity of the judgment, discretion has no field of operation. Cassioppi v. Damico, 536 So.2d 938, 940 (Ala. 1988). "If the judgment is void, it is to be set aside; if it is valid, it must stand.... A judgment is void only if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process." SeventhWonder v. Southbound Records, Inc., 364 So.2d 1173, 1174 (Ala. 1978) (emphasis added).' "
L.T. v. W.L., 159 So.3d 1289, 1291 (Ala. Civ. App. 2014) (quoting Ex parte Full Circle Distrib., L.L.C., 883 So.2d 638, 641 (Ala. 2003) ). Furthermore,
"[o]ne who contends that an adverse party has obtained a verdict through fraud, misrepresentation, or other misconduct ( Rule 60(b)(3) ) must prove by 'clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case. [Citation omitted.] The resolution of these two issues is within the trial court's discretion, and on review, our only inquiry is whether the trial court abused its discretion.' "
Pacifico v. Jackson, 562 So.2d 174, 179 (Ala. 1990) (quoting Montgomery v. Hall, 592 F.2d 278, 279 (5th Cir. 1979) ).
The probate court's conclusion that the paternal great-grandmother lacked "standing" to contest the adoptions is also incorrect. We first note, as we have before, that
"[o]ur supreme court has indicated, in two plurality opinions, that a majority of the supreme court recognized in Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31, 46 (Ala. 2013), that the concept of standing should be confined to public-law cases. See *1149 Gardens at Glenlakes Prop. Owners Ass'n, Inc. v. Baldwin Cty. Sewer Serv., LLC, 225 So.3d 47, ---- (Ala. 2016), and Jakeman v. Lawrence Grp. Mgmt. Co., LLC, 151 So.3d 1083, 1087-88 (Ala. 2014). As explained in Jakeman, 'in private-law cases such questions as whether " 'the present plaintiff is ... entitled to a remedy' " is " 'better addressed through private-law concepts' " such as " 'cause-of-action, real-party-in-interest, capacity, intervention, and like concepts.' " ' Jakeman, 151 So.3d at 1088 (quoting Ex parte BAC, 159 So.3d at 44-45, quoting in turn 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531 (3d ed. 2008) ).
Ex parte Gentry, 228 So.3d 1016, 1020 (Ala. Civ. App. 2017).
We perceive the challenge to "standing" as an argument that the paternal great-grandmother had no cognizable claim in the adoption actions, i.e., had no right to be made a party to or to challenge the adoptions. See Ex parte J.W.B., 230 So.3d 783, 800 n.16 (Ala. 2016) (Murdock, J., dissenting) ("The probate court's reference to 'standing' is in error because that concept is 'out of place in private-law cases.' Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31, 44 (Ala. 2013). The issue is not one of 'standing' but simply whether the father had a cognizable claim to contest the adoption under the applicable facts and law."). As a person having the right to custody or visitation with the children, the paternal great-grandmother was entitled to receive notice of the pendency of the adoption actions pursuant to Ala. Code 1975, § 26-10A-17(a)(6). A person entitled to notice of the pendency of an adoption action is also entitled to contest that adoption. See § 26-10A-17(b) ("The notice shall specifically state that the person served [the notice required by § 26-10A-17(a) ] must respond to the petitioner within 30 days if he or she intends to contest the adoption."). Thus, the paternal great-grandmother has a cognizable claim to contest the adoptions, and the probate court erred in concluding that she lacked the rights to receive notice of, and to participate in, the adoption actions and to contest the adoptions.
" ' "It is well settled that adoption is purely statutory, unknown to the common law, and that strict statutory adherence is required." ' " L.T., 159 So.3d at 1291 (quoting Ex parte S.C.W., 826 So.2d 844, 849 (Ala. 2001), quoting in turn in S.C.W. v. C.B., 826 So.2d 825, 842 (Ala. Civ. App. 2001) (Crawley, J., dissenting)). Furthermore, we note that judgments entered in a manner inconsistent with due process are void. See Holt v. Limestone Cty. Dep't of Human Res., 226 So.3d 201, ----(Ala. Civ. App. 2016). The failure of the adoptive mother and the adoptive father to give notice of the adoption actions to the paternal great-grandmother as required by § 26-10A-17(a)(6) violated the paternal great-grandmother's due-process rights, and the adoption judgments are therefore void. See M.M. v.D.P., 10 So.3d 605, 608 (Ala. Civ. App. 2008) (holding void an adoption judgment where the probate court failed to give notice of the pendency of an adoption action to a presumed father); Ex parte Stinson, 532 So.2d 636 (Ala. Civ. App. 1988) (holding void an adoption judgment entered without notice to a paternal grandmother under former adoption statutes). Because we have concluded that the adoption judgments are void, we necessarily reverse the probate court's judgment dismissing the Rule 60(b) motions. The probate court is instructed to set aside the adoption judgments, to serve proper notice of the adoption actions on the paternal great-grandmother, and to *1150 conduct further proceedings consistent with this opinion.
Our resolution of these appeals in favor of the paternal great-grandmother does not resolve the arguments of the father, however. The probate court stated in its judgment dismissing the Rule 60(b) motions that the father had been properly served by publication. If service by publication on the father was proper, then his failure to answer the adoption petitions within 30 days of the completion of service results in his implied consent to the adoptions. Ala. Code 1975, § 26-10A-9(a)(4). Although the adoption judgments are void and the paternal great-grandmother must be given notice and an opportunity to contest the adoptions, the voidness of the adoption judgments does not change the fact that the father has been deemed to have impliedly consented to the adoptions.
In the Rule 60(b) motions, the father contended that he was not properly served by publication and therefore that his due-process rights had been infringed. We note that Ala. Code 1975, § 26-10A-17(c)(1), permits service by publication when the whereabouts of a parent are unknown and that § 26-10A-17(c)(3) permits service by publication after two attempts at service by certified mail have failed. The father, however, alleged in the Rule 60(b) motions that the adoptive mother had had available other methods by which to reach him and to determine his whereabouts. He specifically relied on the fact that the adoptive mother had personally retrieved the children from his custody when she was awarded ex parte custody in the dependency actions only one month before the adoption actions were instituted and the fact that she had had contact with the father and the paternal great-grandmother during the pendency of the dependency actions but had neglected to inform them of the adoption actions. As further support for his argument, the father provided copies of text messages purporting to be from the adoptive mother to him that he received in April 2016. Thus, the father argued to the probate court that he had evidence that would support a conclusion that the adoptive mother had not "exhausted all known means to locate ... the father" and that service by publication was therefore improper.
As noted, the probate court failed to hold a hearing on the Rule 60(b) motions. Although a court is not required to hold a hearing on a Rule 60(b) motion before ruling on that motion, especially where the motion "clearly is without substance and merely an attempt to burden the court with frivolous contentions," the failure to hold a hearing may be an abuse of discretion under certain circumstances. Waldron v. Fikes, 378 So.2d 1138, 1139 (Ala. 1979). In Snooky Hairrell Volkswagen, Inc. v. Speer, 689 So.2d 51, 54 (Ala. 1997), our supreme court explained that when the movant makes a showing that, if true, would be a basis for relief under Rule 60(b), the movant is entitled to a hearing on a Rule 60(b) motion. Thus, where the factual allegations made in support of the motion would, if true, support relief under Rule 60(b), a hearing should be held on the Rule 60(b) motion. Speer, 689 So.2d at 54 ; see also United States v. City of Fort Smith, 760 F.2d 231 (8th Cir. 1985) (explaining that, where the circumstances of the case indicate that a hearing would assist the court in exploring the facts underlying the request for relief and allow the moving party a fair opportunity to prove the factual accuracy of its claim that the judgment should be set aside, the failure to hold a hearing is an abuse of discretion); Clarke v. Burkle, 570 F.2d 824 (8th Cir. 1978) (same); and Residential Funding Co. v. Thorne, 973 N.E.2d 294, 305 (Ohio App. 2012) (quoting *1151 Coulson v. Coulson, 5 Ohio St. 3d 12, 16, 448 N.E.2d 809, 812 (1983), quoting in turn Adomeit v. Baltimore, 39 Ohio App. 2d 97, 103, 316 N.E.2d 469, 476 (1974) (" ' "If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civil Rule 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion." ' ").
In the present case, the Rule 60(b) motions contain serious allegations regarding the adoptive mother's level of diligence in seeking the whereabouts of the father for purposes of perfecting service in the adoption actions. The probate court could not have concluded that service on the father was properly perfected by publication in the adoption actions without hearing from the parties about what service was attempted, especially because, as noted, the record does not reflect that service by publication was warranted under § 26-10A-17(c)(3) because there is no proof that service by certified mail had been attempted twice and had failed. See note 1, supra. Moreover, the probate court could not have effectively considered whether, as the father contended, the adoptive mother was in contact with him when she stated in her affidavit regarding perfecting service that she "had exhausted all known means to locate ... the father." The father's allegations, if proven, would support a determination that the father's due-process rights were violated, that any consent implied by his failure to appear in the adoption actions was invalid, and that he, therefore, should be permitted to appear in the adoption actions and to contest the adoptions. See, generally, Boudreaux v. Kemp, 49 So.3d 1190, 1196 (Ala. 2010) (quoting Reid v. Tingle, 716 So.2d 1190, 1195 (Ala. Civ. App. 1997), quoting in turn Shaddix v. Shaddix, 603 So.2d 1096, 1098 (Ala. Civ. App. 1992) ) (stating that the " ' "[f]ailure to exercise due diligence in perfecting personal service of process precluded notice by publication" ' "). Accordingly, under the facts and circumstances of these cases, we conclude that the probate court erred by not holding a hearing on the father's allegations regarding service in the Rule 60(b) motions and that, therefore, its determination that service by publication was proper in the adoption actions cannot be upheld. Accordingly, the probate court is instructed to hold a hearing on the father's allegations regarding service in the Rule 60(b) motions, to determine, based on the evidence adduced at that hearing, whether service on the father by publication was proper in the adoption actions, and to conduct further proceedings in accordance with that finding.
2160520-REVERSED AND REMANDED WITH INSTRUCTIONS.
2160521-REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

In their brief on appeal, the adoptive mother and the adoptive father state that service by certified mail was attempted on the father. The record contains no certified mail receipts or other indication that service was attempted. In their verified answers to the Rule 60(b) motions, the adoptive mother and the adoptive father state that "[a]ttempted service was made to [the father's] last known address in Docena .... Said mail was returned on or about May 19, 2016[,] stating that 'Return to Sender, Vacant.' " Those statements do not indicate that certified mail was used to serve the father; nor do they indicate that two attempts to serve the father by certified mail were made. See Ala. Code 1975, § 26-10A-17(c)(3) (permitting the probate court to order service by publication when two attempts to serve by certified mail have been attempted and have failed).

In their appellate brief, the adoptive mother and the adoptive father contend that Rule 60(b) does not authorize relief from a judgment based on fraud between the parties. Instead, they state, only fraud on the court may serve as a basis for setting aside a judgment. To the contrary, Rule 60(b)(3) specifically authorizes a court to set aside a judgment on the ground that one of the parties obtained that judgment through "fraud ..., misrepresentation, or other misconduct" committed on another party. See, e.g., Smith v. Smith, 668 So.2d 846, 847 (Ala. Civ. App. 1995) (affirming the grant of a Rule 60(b)(3) motion based on the fraudulent execution of settlement agreement). As our supreme court has explained, if a motion seeking to set aside a judgment based on fraud is not timely filed, the judgment may be set aside only for fraud on the court. See Pacifico v. Jackson, 562 So.2d 174, 179 (Ala. 1990). However, as we explain infra, the Rule 60(b) motions in the present cases were timely filed.