THOMPSON, Presiding Judge.
Kathleen Theresa Cornelison n/k/a Kathleen Cramer (“the wife”) and Bobby Dean Cornelison (“the husband”) were divorced by an August 7, 1998, judgment of the Madison Circuit Court (“the trial court”). That divorce judgment incorporated the terms of a settlement agreement reached by the parties. In pertinent part, the divorce judgment provided, with regard to the division of retirement benefits:
“21. The Wife shall be entitled to 50% of the amount of the Husband’s retirement from the Nation^ Guard when he retires from the same. The Wife shall pay all the taxes due on all of her portion of said retirement benefits.
“The Husband (military member) ... will retire from the National Guard in June 2005 and hé will receive military retirement benefits at. the age of- sixty.
“The parties agree that the Wife (recipient spouse), ..: shall receive one-half (1/2) of the Husband’s disposable military retirement pay beginning as soon as practicable upon the Husband’s retirement, and continuing for so long as the Husband is entitled to receive such benefits. The division of the Husband’s military retirement pay from his service in the National Guard shall constitute a property settlement to the Wife and shall not be modifiable. in the future.
“The parties’ marriage began on September 18, 1980. The Husband’s military service began in June 1979 and it is estimated that said service will terminate in June 2005. ■
“The Wife (recipient spouse) is eligible for direct payment Of her portion of the Husband’s military retirement pay from the Defense Finance and Accounting Service (DFAS) as a result of the- parties’ being married for more than ten years of creditable service on active duty in the National Guard....
“The Defense [Finance] and Accounting Service, or its successor, is authorized and directed to make direct payments of the Wife’s one-half of the Husband’s disposable military retired pay directly to the Wife ... at such address as she may from time to time provide to DFAS or its successor. Said payments shall begin effective upon the Husband’s retirement and shall continue payable to the Wife until the death of the Husband.
“If, during any month that the Husband is entitled to receive military retired pay, DFAS or its successor shall fail or refuse to make a direct payment to the Wife and makes instead payment of the Wife’s portion to the Husband, then the Husband agrees to immediately pay to the Wife her portion of the military retired pay, it is intended that this Order shall qualify as a Qualified Domestic Relations Order as such is de *885 fined under Section 414(p) of the Internal Revenue Service Code of 1986, as amended. The parties agree that this Court shall retain jurisdiction to amend this Order as might be necessary to establish or maintain its status as a Qualified Domestic Relations Order, or otherwise to carry out the intent of this Agreement.
“22. The Wife shall be entitled to 50% of the amount in the Husband’s police pensions as of the date of the entry of a final decree of divorce, it is intended that said amount as determined by said date is a property settlement and the Wife shall not be entitled to further benefits from said plans which may have accrued after said date. The parties agree that pursuant to Qualified Domestic Relations Orders, 50% of the Husband’s pension plans; as of said date, shall be set aside and segregated for the benefit of the wife in the PEBSCO, Retirement Systems of Alabama plan, and Police Office Annuity Funds. Such Qualified Domestic Relations Orders will be substantially in the form of the Orders which are attached to .this Agreement as Exhibit ‘A’, Exhibit ‘B’, and Exhibit ‘C.’ The Wife shall make no other present or future claim with respect to these pension plans.”
(Emphasis added.)
On July 19, 1999, the trial court entered an order titled “Consent Order Modifying Method by Which [the Wife] Receives Certain Retirement Funds.” That order provided:
“This cause comes to be heard on the [the wife’s] motion to alter or amend the divorce [judgment] entered on August 7, 1998, and the parties have stipulated that they have reached an agreement regarding the same. Upon consideration of the same, the Court does hereby ORDER, ADJUDGE, and DECREE as follows:
“1. [The husband] is hereby ORDERED to pay to the [wife] from his retirement benefit through the Retirement Systems of Alabama,-an amount equal to one-half of a fraction, the numerator of which is 10, and the denominator of which is the total number of years the [husband] has participated in the Retirement Systems of Alabama system.
“2. The [husband] is hereby ORDERED to pay to the [wife] from his retirement benefit through the Alabama Peace Officers’ Annuity and Benefit Fund, an amount equal to one-half of a fraction, the numerator of which is 10, and the denominator of which is the total number of years the [husband] has participated in the Alabama Peace Officers’ Annuity and Benefit Fund system.
“3. The [husband] is hereby ORDERED to pay to the [wife] from his retirement benefit through the Public Employees Benefit Services Corporation (PEBSCO), an amount equal to one-half of a fraction, the numerator of which is 10, and the denominator of which is the total number of years the [husband] has participated in the Public Employees Benefit Services Corporation (PEBSCO) .system.
“4. The [husband] shall make said payments to the [wife] on the tenth (10th) day of each month he receives each said pension or retirement benefits.
“5. The [husband] shall provide to the [wife] each month copies of all pay stubs or other evidence showing the gross amount paid to the [husband] each month for said benefits.
“6. The [wife] is hereby authorized by the Court and by the [husband] to obtain information from the payors of said retirement benefits the amount of *886 the benefits being paid to the [wife] in order to verify the same.
“7. The parties reserve the right to petition the Court for a modification of child support, or any other issues regarding enforcement of terms of the parties’ divorce decree, which may have occurred prior to the entry of this order. This consent modification is intended only to modify the method by which the [wife] receives certain retirement funds, as the plan administrators will not hon- or the Qualified Domestic Relations Order previously entered.”
(Emphasis added.)
On January 29, 2014, the wife filed in the trial court a petition seeking to have thq husband held in contempt for his alleged failure to comply with the provisions of the August 7, 1998, divorce judgment and the July 19, 1999, consent order that governed the division of retirement benefits. The husband answered, denying the material allegations of the contempt petition. On September 14, 2014, the husband moved to dismiss the wife’s petition, arguing in that motion that the July 19, 1999, consent order was an improper modification of the property-settlement provisions of the divorce judgment and, therefore, that that order could not be enforced. As part of his motion to dismiss, the husband sought an order determining that the July 19, 1999, consent order was invalid for want of subject-matter jurisdiction. .
The trial court conducted an ore tenus hearing. On September 17, 2014, the trial court entered a judgment determining that the husband had failed to pay a certain amount due to the wife from his retirement benefits and determining the amount owed to the wife. The trial court denied the wife’s claim seeking to have the husband held in, contempt. The trial court also entered a separate order on that same date in which it denied the husband’s motion to dismiss.. The husband filed a post-judgment. motion, which the trial court denied. The husband timely appealed.
On appeal, the husband argues only that the trial court erred in entering its September 17, 2014, judgment because, he contends, the July 19, 1999, consent order upon which the 2014 judgment is purportedly based is void for want of subject-matter jurisdiction.[1] We note that, in addressing this argument, we have elected to interpret the husband’s September 14, 2014, motion to dismiss the wife’s contempt petition as also seeking relief pursuant to Rule 60(b)(4), Ala. R. Civ. P.; in other words, we interpret that motion as seeking an order declaring the July 19, 1999, consent order void for want of jurisdiction. See T.K.W. v. State Dep’t of Human Res. ex rel. J.B., 119 So.3d 1187, 1194 (Ala.Civ.App.2013) (noting that a motion should be interpreted according to its sub-stancé and concluding that the-motion at issue in that case was one filed pursuant to Rule 60(b), Ala. R.. Civ. P.). Accordingly, we conclude that the husband may challenge the trial court’s denial of his motion to dismiss, which, ‘ effectively, denied his request that the July 19, 1999, consent order be set aside for lack of jurisdiction.
The husband points out that the July 19, 1999, consent order stated that it was entered in response to a Rule 59(e), Ala. R. Civ. P., postjudgment motion filed by the wife. A valid Rule 59(e) motion to alter or amend a judgment remains pending for 90 days, and, if the trial court fails *887 to rule on the motion within those 90 days, the motion is deemed denied by operation of law. See Rule 59.1, Ala. R. Civ. P. Thereafter, a trial court loses jurisdiction to consider or act upon the postjudgment motion. Sibley v. Sibley, 90 So.3d 191, 193 (Ala.Civ.App.2012).
The Wife submitted into evidence a copy of a 1999 postjudgment motion provided to her by her attorney; that motion was unsigned. The wife’s attorney represented to the trial court that he no longer had the 1999 court file and could not demonstrate when or if the 1999 postjudgment motion h,ad been filed. The case-action summary for the divorce action does not indicate that the postjudgment motion was filed;, however, it is clear from the language of the July 19, 1999, consent order that such a motion was filed. Regardless, it is clear that a valid Rule 59(e) motion taken from the August 7,1998, divorce judgment must have been filed by September 8, 1998. See Rule 6(a), Ala. R. Civ. P. (governing the computation of time periods), and Rule 59(e), Ala. R. Civ. P. (governing post-judgment motions to alter, amend, or vacate a judgment).[2] Such a.motion could remain pending until December 7, 1998, see Rule 59.1, and would thereafter be denied by operation of law; Sibley v. Sib-ley, supra. The husband argues that the trial court did not have jurisdiction to enter its July 19, 1999, consent order because, he contends, that order “modified” the original property-division provisions of the August 7,1998, divorce judgment after the expiration of the 90-day period allowed by Rule 59.1; he argues the trial court entered that order well 'after it had lost jurisdiction to act on the wife’s 1999 post-judgment motion.
We agree that it appears that the trial court intended that the July 19,1999, consent order be entered in response to the wife’s postjudgment motion. The husband’s arguments, however, are based on the assumption' that the July 19, 1999, consent order modified the retirement-benefit provisions of the August 7, 1998, divorce judgment. In his original brief submitted to this court, the husband .merely alleges in passing that the July 19,1999, consent order contained provisions “expressly different than [those] set out” in the divorce judgment. The husband makes no effort to explain the alleged modification set forth in the consent order. The wife argues in her brief submitted to this court that the July 19, 1999, consent order did not modify the divorce judgment. In his reply brief, the husband insists that the consent order involved a modification of the divorce judgment; he contends that the consent order “creates a new property division.” The husband argues that the divorce judgment did not contemplate awarding the wife a fraction of his retirement benefits,' and he states that it is “not mathematically possible to obtain the same numerical results as what was stated in” the divorce judgment. However, the husband, in asserting that argument, made no attempt to demonstrate to this court how the calculations of the benefits due under the-divorce judgment are different from those calculated pursuant to-the specific method set forth in the July 19, 1999, consent order.
This court has examinéd the relevant provisions of both the August 1; 1998, divorce judgment and the July 19, 1999, consent order. The divorce judgment provides, in essence, that the wife will receive payments representing a 50% interest in *888 the husband’s retirement benefits that had accrued during the marriage; in other words, the wife was awarded no interest in any retirement benefits the husband has earned after the divorce. The July 19, 1999, consent order sets forth the manner in which the' benefits addressed in the divorce judgment are to be calculated and paid to the wife. That order provides that the wife is awarded a fractional interest in the husband’s retirement benefits that, from what this court can discern, is equivalent to one-half the retirement benefits that accrued during the parties’ marriage. This court is unable to determine in what manner, if any, the July 19, 1999, consent order modified the calculation of retirement benefits awarded to the wife under the terms of the August 7, 1998, divorce judgment. Rather, it appears that the July 19, 1999, consent order sets forth a manner of calculating the retirement benefits awarded to the wife in the divorce judgment.
Further, the divorce judgment specifies that the trial court will maintain jurisdiction to amend the judgment if necessary to implement the provisions governing the division of the retirement benefits. The wife presented evidence during the hearing in this matter indicating that she was unable to enforce the Qualified Domestic Relations Orders entered by the trial court and that she had sought to amend the divorce judgment to specify the manner in which the retirement benefits were to be divided. The consent order specifies that it “is intended only to modify the method by which the [wife] receives certain retirement funds, as the plan administrators will not honor the Qualified Domestic Relations Order previously entered.” As stated, this court is unable to determine that the July 19, 1999, consent order modified the division of retirement benefits set forth in the parties’ divorce judgment, and the husband has failed to demonstrate to this court that such a modification occurred.
A trial court may enter orders clarifying or implementing its judgment. In Grayson v. Grayson, 628 So.2d 918 (Ala.Civ.App.1993), the wife in that case filed an action seeking to enforce a divorce judgment, arguing that the husband in that case had failed to pay certain debts. The trial court entered a judgment reaffirming the provisions of the divorce judgment and finding both parties in contempt. The wife in that case filed a motion purportedly pursuant to Rule 59 seeking an order reducing the amounts the husband had failed to pay into a judgment, and, after the 90 days for acting on that motion had expired, the trial court entered an amended order awarding the wife a money judgment. This court concluded that the trial court had jurisdiction to enter its amended order because, we held, although “the wife’s motion appears to request a modification of the judgment pursuant to Rule 59, A[la]. R. Civ. P., the relief sought by the motion is that the trial court enforce its original judgment.” 628 So.2d at 919. The court explained:
“A trial court possesses an inherent power over its own judgments that enables it to interpret, implement, or enforce those judgments. Patterson v. Patterson, 518 So.2d 739 (Ala.Civ.App.1987). If provisions of a property settlement are ambiguous, the court may enter an order clarifying such matters, and such is not a modification of that agreement. Williams v. Williams, 591 So.2d 879 (Ala.Civ.App.1991). Property settlements pursuant to divorce judgments generally are not modifiable; however, this court has held that although a divorce judgment is final for the purpose of appeal, it may also be interlocutory in nature ‘insofar as necessary to implement or enforce the provisions as to final disposition of the property.’ Ha *889 ney v. Haney, 50 Ala.App. 79, 81, 277 So.2d 356, 358 (1973). In Mayhan v. Mayhan, 395 So.2d 1022 (Ala.Civ.App.1981), this court determined that a post-divorce judgment did not modify the original judgment, rather, it merely clarified or enforced an ambiguous original judgment.
“In the case sub judice, the original divorce judgment ordered that the husband ‘pay and be responsible’ for certain debts without specifying the manner in which those debts were to be paid. When the trial court subsequently entered a judgment against the husband for an amount equal to the unpaid credit card debts, it ‘did no more than enforce the original judgment, as it was empowered to do.’ Filer v. Filer, 502 So.2d 698, 701 (Ala.1987). Although the trial court was without jurisdiction to modify the original judgment on March 9, 1993, it had the authority to clarify and enforce its original judgment of divorce on that date.”
Grayson v. Grayson, 628 So.2d at 919.
In Mayhan v. Mayhan, 395 So.2d 1022 (Ala.Civ.App.1981), cited in Grayson v. Grayson, supra, the divorce judgment ordered that the parties’ marital home be sold and the equity evenly divided between the parties. This court held that the trial court in that case had jurisdiction to enter a subsequent judgment specifying the manner in which the sale was to be conducted and the proceeds of the sale divided. The court explained:
“[T]he 1980 judgment did not modify the 1979 agreement and judgment. The agreement authorized an equal division of their equity in the property should the house be sold and no alteration as to such provision was made by the latest judgment. The agreement was ambiguous since it did not state how, when, by whom or in what manner the house would be sold, and the judgment clarified such matters. By virtue of the agreement of the parties, the court originally had jurisdiction of the property. By operation of law, the circuit court retained jurisdiction for any further judgments which might be subsequently required in order to enforce, implement or make a final disposition of the matter.”
395 So.2d at 1023-24.
Similarly in this case, the parties’ divorce judgment specifies that the wife will receive one-half of the husband’s retirement benefits that had accrued during the parties’ marriage. The parties entered into an agreement, formalized by the entry of the July 19,1999, consent order, regarding the method by which the wife’s portion of the retirement benefits were to be calculated. Given the evidence in the record, the findings in the trial court’s divorce judgment and the consent order, and the arguments of the parties, we hold that in entering its July 19, 1999, consent order, the trial court was exercising its jurisdiction to implement the terms of the August 7,1998, divorce judgment.
The husband’s sole argument in this appeal was that the trial court lacked subject-matter jurisdiction to enter the July 19, 1999, consent order, and, therefore, that the September 17, 2014, judgment could not be based upon the consent order, and this court has rejected that argument. The husband has not raised any other issues pertaining to the propriety of the September 17, 2014, judgment. Accordingly, we affirm the September 17, 2014, judgment of the trial court.
AFFIRMED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. We note that the husband has not addressed the issue whether the trial court could have reached the same result in its September 17, 2014, judgment had it relied solely on the August 7, 1998, divorce judgment. We have elected not to reach that issue and have addressed the appeal solely based on the issue raised by the husband in his appeal.

. The 30th day following August 7, 1998, was Sunday, September-6, 1998. Monday, September 7, 1998, was Labor Day.